# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

| UNITED STATES OF AMERICA | *CRIMINAL NO. 6:06-60074-07 |
| | CIV. NO. 6:15-0577 |
| VERSUS | *JUDGE DOHERTY |
| ANTONIO LUNA VALDEZ, JR. | * MAGISTRATE JUDGE HANNA |

## REPORT AND RECOMMENDATION

Pending before the undersigned for Report and Recommendation is the Motion to Vacate filed pursuant to 28 U.S.C. § 2255 by *pro se* petitioner, Antonio Luna Valdez, Jr. ("Valdez"). [rec. doc. 1318].

In his voluminous filing, consisting of over 300 pages, petitioner argues that he received ineffective assistance of counsel[1], that he received ineffective assistance of appellate counsel[2], that the trial court erred by not employing a

---

[1]The specific claims of alleged ineffective assistance are set forth in petitioner's "Statement of Fact" [rec. doc. 1318-1] and "Memorandum of Law" [rec. doc. 1318-3]. The claims include: (1) failure to recognize two "fatally flawed" grand jury indictments; (2) failure to file a Motion to Dismiss presenting "transference of guilt"; (3) failure to present "fatal variances" between the second superceding indictment and the evidence; (4) failure to present/preserve the issue that the overt acts in the indictment were statutorily barred; (5) failure to challenge the increased drug amounts in the second superceding indictment; (6) failure to present a Sixth Amendment Constitutional speedy trial claim; (7) failure to fully cross-examine Agent Catalan; (8) failure to explain the consequences of the filing of a § 851 notice; (9) failure to allow petitioner to testify; (10) failure to object to the prosecutor's misconduct; (11) failure to request a special verdict form specifying which drug was involved in the conspiracy; (12) failure to investigate to prepare a meaningful defense; (13) counsel had a conflict of interest; (14) failure to file a Motion to Dismiss on Speedy Trial Act grounds; (15) inability to challenge the § 851 Notices due to counsel's inaction; (16) failure to file a Motion for Judgment of Acquittal; (17) failure to assert a double jeopardy challenge; and (18) failure to file a Motion to Suppress wiretap recordings.

[2]The specific claims of alleged ineffective assistance of appellate counsel are set forth in petitioner's "Statement of Fact" [rec. doc. 1318-1] and "Memorandum of Law" [rec. doc. 1318-3]. The claims include: (1) failure to raise the "fatal variances" in the second superceding indictment; (2) failure

"special verdict form" to determine drug amounts pursuant to *Apprendi* and

*Alleyne*, that he is "actually innocent" of the charged offense, that there was

insufficient evidence to support his conviction and that the government did not

comply with the rules for service of § 851 Notices.

The Government has filed an Answer, and a Memorandum in Support of its

Answer [rec. doc. 1324], to which petitioner filed a Reply.[3] [rec. doc. 1333].

For the following reasons, the Court recommends that the Motion be

**DENIED AND DISMISSED WITH PREJUDICE**. Since the Court is able to

make this recommendation based on the record, transcripts and briefs filed by the

parties, no evidentiary hearing is necessary.[4]

## BACKGROUND

On November 16, 2006, Valdez was named with twelve others in a multi-

count indictment charging him with conspiracy to possess with intent to distribute

---

to raise insufficiency of the evidence; (3) failure to raise the issue regarding the use of a special verdict form; (4) failure to raise the issue regarding the increased drug amounts in the second superceding indictment; (5) failure to raise that the overt acts were time barred; (6) failure to raise that the indictments were defective; (7) failure to advise that writs of certiorari could be sought; and (8) a claim under *Martinez v. Ryan* for failure to contest the merits of the underlying criminal charge, and instead challenged the procedural aspects of the proceeding.

[3]Valdez additionally filed a Supplemental Memorandum over one year after his initial filing, without obtaining leave of court. [rec. doc. 1345]. Nevertheless, the Court has considered this filing as well.

[4]No evidentiary hearing is required in a § 2255 petition where the claims made by the petitioner are either contrary to law or plainly refuted by the record. *U. S. v. Green,* 882 F.2d 999, 1008 (5th Cir.1989).

cocaine, cocaine base and marijuana in violation of 21 U.S.C. § 846 (Count 1). The government also sought forfeiture of certain items pursuant to 21 U.S.C. § 853 (Count 16). [rec. doc. 1].

The indictment alleges that between January 1, 2002 through October 1, 2006 Valdez and his co-conspirators knowingly participated in an illegal scheme for profit, involving the procurement, smuggling and transportation of cocaine and marijuana from Mexico into the United States through the Rio Grande Valley to the Acadiana region of Louisiana.

Valdez is named in overt acts dealing with his having been in possession of drugs, having been a visitor at the residence of Eric Joseph Alexander ("Alexander") (after which suspected drug related activities occurred), having been a passenger in a vehicle in which another passenger was found to have been carrying drugs and as having been the titled owner of two tractor trailer trucks found to contain a large sum of money and a large quantity of marijuana.

More specifically, overt act (a) alleges that on February 11, 2003, Valdez possessed marijuana and cocaine in Arkansas. Overt act (d) alleges that on April 27, 2004, Valdez, Victor Luna Valdez and Sabina Luna Valdez visited the residence of Alexander and Francisca Wiltz Alexander, after which Alexander deposited $5,000.00 into a credit union account (overt act (e)). Overt act (f) alleges that on May 21, 2004, Valdez, Victor Luna Valdez and Sabina Luna

Valdez again visited the residence of Alexander and Francisca Wiltz Alexander and within days thereafter, Alexander entered a storage center, which was later found to contain marijuana (overt acts (g) and (h)). Overt act (j) alleges that on November 26, 2004, Valdez was a passenger in a vehicle with Victor Luna Valdez and Sabina Luna Valdez, which was entering the United States from Mexico, wherein Sabina Luna Valdez was found to have been carrying six kilograms of cocaine and three grams of cocaine base on her person. Overt acts (p) and (q) allege that on April 23, 2006 and May 20, 2006, respectively, tractor trailer trucks titled to Valdez, were stopped and found to be carrying $961,155.00 and 335 kilograms of marijuana, respectively. Overt act (r) alleges that on September 11, 2006, a tractor trailer titled to Victor Luna Valdez was found to contain 104 kilograms of marijuana.

William M. Dauphin was appointed to represent Valdez. [rec. docs. 176, 185]. However, Valdez subsequently retained Jack L. Wolfe to represent him. Accordingly, the prior CJA appointment of Mr. Dauphin was recalled, and Mr. Dauphin was ordered to remain on the docket as local counsel of record for Valdez. [rec. docs. 211, 219, 221].

On November 14, 2007, Valdez was named in a superceding indictment, charging several co-defendants, including Alexander and Barry Joseph Neveu

("Neveu"), with a second conspiracy to commit money laundering[5] and additionally, renumbering the forfeiture count. [rec. doc. 235].

The originally charged large scale drug conspiracy remained the same, that is, an illegal scheme for profit, involving the procurement, smuggling and transportation of cocaine and marijuana from Mexico into the United States through the Rio Grande Valley to the Acadiana region of Louisiana.

The overt acts naming Valdez in the superceding indictment are the same as in the original indictment, except that Francisca Wiltz Alexander is not mentioned in overt acts (d) and (f), presumably because she had already entered a guilty plea prior to the return of the superceding indictment. Overt act (r), alleging that on September 11, 2006, a tractor trailer tilted to Victor Luna Valdez was found to contain 104 kilograms of marijuana, remained unchanged. [rec. doc. 232].

The evidence for both indictments was presented to the grand jury by the same Assistant United States Attorney, Mr. Brett Grayson ("AUSA Grayson").

On May 10, 2007, the government filed an Information to Establish Prior Convictions pursuant to 21 U.S.C. § 851, charging Valdez with having been

---

[5]The superceding indictment alleges that Alexander and Neveu knowingly participated in a scheme to conceal the proceeds of drug trafficking activities. This was accomplished, allegedly, by Neveu receiving drug proceeds from Alexander, depositing the funds into a B & M bank account, and then issuing B & M payroll checks to Alexander, to create the appearance that Alexander was a B & M employee, and to avoid federal financial reporting requirements. Neveu's former spouse, Jennifer McKnight ("Jennifer"), and her mother, Deborah McKnight ("Deborah"), were former B & M employees who apparently knew of the scheme, but were not indicted.

convicted of two prior felony drug offenses in Oklahoma and Arkansas, thereby subjecting Valdez to enhanced sentencing. 21 U.S.C. § 841(b)(1)(A). On December 22, 2008, the government supplemented the first Information to Establish Prior Convictions with an additional prior felony conviction in federal court in the Southern District of Texas thereby charging Valdez with having been convicted of a total of three prior felony drug offenses. [rec. docs. 182 and 472].

Trial was set for June 9, 2008. [rec. doc. 267]. However, Valdez moved to continue the trial due to a calendar conflict. [rec. doc. 335]. Over the government's objection, the Court continued the trial. [rec. doc. 344, 369, 373]. The case was reset for jury trial on January 5, 2009. [rec. doc. 373]. Following the filing of Motions, including Motions in Limine filed by Valdez, hearings and jury selection, trial was set to begin on January 21, 2009. [rec. docs. 494, 495, 502, 503, 505, 506, 507]. Prior to trial, Alexander and all other co-defendants, except Michael Scott Wyatt ("Wyatt"), Valdez and Yvette Francis Eaglin ("Eaglin"), entered guilty pleas.

On January 20, 2009, Valdez filed a Motion to Dismiss Count One of the Indictment. [rec. doc. 510]. The Motion was deferred by the Court. [rec. doc. 516]. Trial of the three remaining defendants, Wyatt, Valdez and Eaglin, began on January 21, 2009. The main defendant, Alexander, after entering a guilty plea, became a cooperating government witness. On the third day of trial, January 23,

2009, Valdez' retained attorney, Mr. Wolfe, was not present. After conducting an investigation, the Court determined that a medical condition precluded Mr. Wolfe from continuing trial at that time. The government moved to sever Valdez, or, alternatively, moved for a mistrial only as to Valdez. Wyatt, Eaglin and Valdez moved for a mistrial. The court denied the government's motion, and granted the defendants' motion for a mistrial, without prejudice, because Valdez insisted that Mr. Wolfe continue to represent him. [rec. doc. 525].

After proceedings to determine Mr. Wolfe's physical and medical ability to proceed as counsel for Valdez [rec. docs. 551-552, 564-565, 572, 609 -612], the Court ultimately granted Valdez' *pro se* Motion to Appoint Counsel. [rec. docs. 612, 613, 615]. Accordingly, on August 30, 2009, Roy Joseph Richard, Jr. was appointed to represent Valdez. [rec. docs. 616-618].

The trial was reset for March 25, 2010, but Valdez filed a motion to continue, with a waiver of speedy trial protections, so that Mr. Richard could better prepare. [rec. docs. 630, 639, 640, 648]. The district court granted the motion, resetting the trial date for August 30, 2010. [rec. doc. 673].

During the July 1, 2010 pre-trial conference the Court allowed counsel to file a supplemental brief to Valdez' pending Motion to Dismiss Count One of the Indictment [rec. doc. 510]. [rec. doc. 784]. A supplemental memorandum in support was filed by Valdez on July 16, 2010. [rec. doc. 790]. The Motion was

denied by the court on October 14, 2010. [rec. docs. 812 and 813].

Shortly before the August 30, 2010 trial was set to begin, Valdez and his co-defendants filed another motion to continue the trial, with another waiver of speedy trial protections, asking the Court permission to present "extremely serious legal and factual reasons" to the district court for the continuance. [rec. doc. 796, 800]. The United States opposed the continuance. [rec. doc. 797]. At an August 4, 2010 hearing, defense counsel informed the court, in camera, that based on testimony at the 2009 trial, the Department of Homeland Security and the Department of Justice were conducting investigations into alleged misconduct, including witness tampering and subornation of perjury, by the prosecution and case agents. Richard stated his belief that taking Valdez' case to trial before the investigation was completed would cause "a train wreck" and indicated that Valdez had filed a speedy trial waiver. After the hearing, the district court confirmed the existence of the investigation, and citing "the unique circumstances" granted a continuance, stating that the trial would be reset "when this matter is in a proper posture for trial." [rec. docs. 809, 803, 1240 and 1241]. Thereafter, a lengthy internal investigation into the prosecuting AUSA and the lead case agents was conducted. In the interim, Valdez was released from custody. [rec. docs. 811].

On May 23, 2011, both Valdez and Wyatt filed Motions to Dismiss the original and superceding indictments based on alleged prosecutorial misconduct.

[rec. docs. 828 and 829]. Valdez additionally filed a Motion for Production of the grand jury transcripts, which was subsequently granted on September 13, 2011. [rec. docs. 878, 905].

On September 14, 2011, Valdez was named in a second superceding indictment again charging him with conspiracy to possess with intent to distribute cocaine, cocaine base and marijuana in violation of 21 U.S.C. § 846 (Count 1). The second conspiracy to commit money laundering, in which Valdez was not involved, was deleted. [rec. doc. 910]. The second superceding indictment again alleges that between January 1, 2001 and October 1, 2006, Valdez knowingly and intentionally conspired with Alexander, Victor Luna Valdez, Sabina Luna Valdez and several others, to possess with intent to distribute cocaine, cocaine base and marijuana, the object of the conspiracy being an illegal scheme for profit involving the procurement, smuggling and transportation of cocaine and marijuana from Mexico into the United States through the Rio Grande Valley in Texas into the Acadiana region of Louisiana, and the subsequent distribution to other locations in the United States. The indictment increased the amount of cocaine base involved in the conspiracy from 50 grams or more to 280 grams or more.

The overt acts in which Valdez is named mirror those in the original and first superceding indictment. However, the overt acts were re-designated and

contain several textural changes. Specifically, overt act (a) alleges that on February 11, 2003, Valdez possessed marijuana in Arkansas. There is no longer any mention of Valdez having possessed cocaine. Overt act (b) (formerly (d)), alleges that on April 27, 2004, Valdez, Victor Luna Valdez and Sabina Luna Valdez visited the residence of Alexander. As was the case with the first superceding indictment, there is no mention of Francisca Wiltz Alexander being a resident of the location visited. Overt act (c) (formerly (f)) alleges that on May 21, 2004, Valdez, Victor Luna Valdez and Sabina Luna Valdez again visited the residence of Alexander. As was the case with the first superceding indictment, there is no mention of Francisca Wiltz Alexander being a resident of the location visited. Overt act (d) (formerly (j)) alleges that on November 26, 2004, Valdez was a passenger in a vehicle with Victor Luna Valdez and Sabina Luna Valdez, which was entering the United States from Mexico, wherein Sabina Luna Valdez was found to have been carrying on her person six kilograms of cocaine and three grams of cocaine base. Overt acts (l) and (m) (formerly (p) and (q)) allege that on April 23, 2006 and May 20, 2006, respectively, tractor trailer trucks titled to Valdez, were stopped and found to be carrying $961,155.00 and 335 kilograms of marijuana, respectively. Overt act (n), (formerly (r)), which alleged that on September 11, 2006, a tractor trailer tilted to Victor Luna Valdez was found to

contain marijuana, remained unchanged, however, the quantity of marijuana was increased from 104 kilograms to 230 kilograms.

The second superceding indictment was returned by a different grand jury than that which heard the evidence with respect to the original and first superceding indictments. Moreover, the evidence was presented to that grand jury by a different AUSA, John Luke Walker.

After the second superceding indictment was returned, the government informed the court that the government and the defendant, Wyatt, had agreed to dispose of the charges against Wyatt with a pretrial diversion agreement, effectively rendering the pending motion by Wyatt moot. [*See* rec. doc. 907, p.2, fn.2]. Accordingly, Wyatt's previously filed Motion to Dismiss based on prosecutorial misconduct was held in abeyance, pending notification by the parties that the pretrial diversion agreement was finally binding. After confirming that Wyatt had been accepted for pretrial diversion, Wyatt's Motion to Dismiss was dismissed as moot on November 7, 2011. [rec. docs. 908, 972 and 976].

In the interim, on September 20, 2011, Valdez filed a Motion to Dismiss the pending second superseding indictment. [rec. doc. 919]. Given the return of the second superseding indictment and the government's acknowledgment that it intended to proceed solely on the conspiracy charge alleged in the second

superceding indictment, Valdez' Motion to Dismiss the original and first

superceding indictments was denied and dismissed as moot. Valdez' right to

present evidence in support of all arguments asserted in the Motion to Dismiss the

second superseding indictment was reserved. [rec. docs. 952 and 973]. An

evidentiary hearing was held on September 27, 2011 through September 29, 2011.

[rec. docs. 949, 950, 959]. After the issuance of a lengthy Report and

Recommendation by Magistrate Judge Hill [rec. doc. 1004], and the filing of

objections by Valdez on January 14, 2012, the court denied Valdez' Motion to

Dismiss on January 31, 2012. [rec. doc. 1039]. In so doing, the court rejected

Valdez' claims of prosecutorial misconduct because the government allegedly had

knowingly allowed the entry of false information into the record of the

proceedings, presented the false testimony of Agent Errol Catalan to the grand jury

which returned the original and first supercing indictments and suborned perjury

before the grand jury and during the 2009 trial. [rec. doc. 1004].

Valdez filed two additional pre-trial motions—a motion to dismiss the

indictment under the Speedy Trial Act [rec. doc. 1027], and a motion to continue

to allow Valdez additional time to transfer defense witnesses (in custody of the

Bureau of Prisons) to court. [rec. doc. 1025]. The latter motion contained yet

another speedy trial waiver. [rec. doc. 1025-2]. The district court held a status

conference to address these motions on January 27, 2012. [rec. doc. 1033]. The court mooted the motion to continue by arranging an expedited prisoner transfer. [rec. doc. 1033, 1029, 1263]. Then, after discussion with the court, Mr. Richard verbally withdrew the Speedy Trial Act motion. [rec. doc. 1263].

Valdez went to trial beginning on February 6, 2012. [rec. doc. 1049]. On the ninth day, the jury found Valdez guilty as to Count One of the second superceding indictment, conspiracy to possess with intent to distribute cocaine, cocaine base and marijuana in violation of 21 U.S.C. 846. [rec. docs. 1066].

After preparation of a Pre-Sentence Report (PSI), finding the applicable un-enhanced Guidelines sentencing range to be 210 to 262 months imprisonment [rec. doc. 1205, ¶ 91], the government filed a Motion for a hearing to establish Valdez' three prior convictions. [rec. doc. 1152]. On September 14, 2012, Valdez' counsel orally objected; accordingly, the court allowed counsel to file a written sentencing memorandum. [rec. doc. 1199]. That memorandum was subsequently filed. [rec. doc. 1201].

On September 17, 2012, Valdez' objection to the sentence enhancement was taken up, at which time Valdez argued that the statutorily required notice was improperly served, causing procedural default. The district court overruled this objection. [rec. docs. 1214]. The court then sentenced Valdez to life imprisonment

pursuant to the recidivism-based sentencing enhancement provision of 21 U.S.C. § 841(b)(1(A). [rec. docs. 1200 and 1203].

Petitioner directly appealed to the United States Fifth Circuit Court of Appeal represented by appointed appellate counsel Elizabeth C. Dougherty. [rec. doc. 1213]. On December 16, 2013, the circuit court affirmed Valdez' conviction and sentence. [rec. doc. 1281].

On appeal, Valdez argued the following claims for relief: (1) that the court erroneously limited the scope of cross-examination of a key witness, violating the Confrontation Clause, (2) that pre-trial delay due to a mistrial and an internal investigation violated his Speedy Trial rights, (3) that the court erred in failing to decide his motion to dismiss under the Speedy Trial Act, and (4) that the court erred in applying the sentence enhancement because the government did not comply with the prerequisite notice provision of 21 U.S.C. § 851.

With respect to the Fourth assignment of error, the circuit court held that although the documents were served before Valdez' defense attorneys were officially designated "of record," because "perfect compliance" with service requirements is not required, service of the informations was not technically deficient. The court also held that Valdez was not entitled to new notice after the government changed trial counsel as "Nothing in the statutory language supports the notion that new information documents must be filed when the prosecuting

14

attorney changes." *United States v. Valdez*, 548 Fed. Appx. 995, 1005 (5th Cir. 2013).

The instant Motion was filed on March 12, 2015.

On January 19, 2017, President Obama commuted Valdez' recidivist life sentence to a term of 168 months imprisonment, on condition that Valdez enroll in the Residential Drug Abuse Program. [rec. doc. 1347].

The case was reassigned to Magistrate Judge Whitehurst on the retirement of Magistrate Judge Hill. Upon recusal of Magistrate Judge Whitehurst, the case was reassigned to the undersigned Magistrate Judge and Judge Doherty referred the instant Motion for Report and Recommendation. [rec. doc. 1336].

## LAW AND ANALYSIS

### I. Claims Properly Considered in this § 2255 Motion/Scope of Review/ Procedurally Defaulted Claims

A federal prisoner may collaterally attack his conviction and sentence by filing a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. Section 2255 provides four grounds for relief: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" and (4) that the sentence is

otherwise "subject to collateral attack."

While this language appears broad, the scope of review is actually narrow. The Supreme Court and the Fifth Circuit have emphasized repeatedly that "a collateral challenge may not do service for an appeal." *United States v. Shaid,* 937 F.2d 228, 231 (5th Cir. 1991) (*en banc*), *cert. denied*, 502 U.S. 1076 (1992) *citing United States v. Frady,* 456 U.S. 152, 165 (1982). Following a conviction and exhaustion or waiver of the right to direct appeal, federal courts presume a defendant stands fairly and finally convicted. *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998) *citing Shaid,* 937 F.2d at 231-32; *Frady,* 456 U.S. at 164. As a result, review under § 2255 is ordinarily limited to questions of constitutional or jurisdictional magnitude. *Cervantes,* 132 F.3d at 1109; *Shaid,* 937 F.2d at 232. However, those issues may not be raised for the first time on collateral review without a showing of both cause for the procedural default and actual prejudice resulting from the error. *Cervantes,* 132 F.3d at 1109; *Shaid,* 937 F.2d at 232 *citing Frady,* 456 U.S. at 166.[6]

Other types of error may not be raised under § 2255 unless the defendant demonstrates that the error could not have been raised on direct appeal and, if

_____

[6]A departure from the cause and actual prejudice test might be warranted in cases "in which a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Shaid*, 937 F.2d at 232; *Murray v. Carrier*, 477 U.S. 478 (1986). As set forth below, there has been no constitutional violation in petitioner's case and petitioner has not demonstrated that he is actually innocent. Accordingly, this exception is inapplicable here.

condoned, would result in a complete miscarriage of justice. *Cervantes*, 132 F.3d at 1109; *United States v. Pierce,* 959 F.2d 1297, 1301 (5th Cir. 1992), *cert. denied*, 506 U.S. 1007 (1992).

The government correctly asserts, under the applicable law, all of petitioner's claims, except his claims of ineffective assistance of trial and appellate counsel, may not properly be considered in this § 2255 Motion. These claims were not presented on direct appeal and petitioner has failed to demonstrate either cause or prejudice for his default or actual innocence. They are therefore procedurally barred. These claims include the following: that the trial court erred by not employing a "special verdict form" to determine drug amounts pursuant to *Apprendi* and *Alleyne*, that petitioner is "actually innocent" of the charged offense, that there was insufficient evidence to support Valdez' conviction and that the government did not comply with the rules for service of § 851 Notices. Furthermore, some of the claims are simply not cognizable in § 2255 proceedings. Nevertheless, these claims will be briefly addressed below.

### *Apprendi* **and** *Alleyne* **Claim**

Valdez argues that he is entitled to relief under the United States Supreme Court's decisions in *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Alleyne v. United States*, - - U.S. - - , 133 S.Ct. 2151 (2013). In *Apprendi*, the Court held

that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi,* 530 U.S. at 490. In *Alleyne,* the Supreme Court held that any fact that increases a defendant's mandatory minimum sentence must be submitted to a jury to be proved beyond a reasonable doubt. *Alleyne*, 133 S.Ct. at 2163. As the government correctly argues, *Apprendi* is not retroactively applicable to cases on collateral review. *United States v. Brown*, 305 F.3d 304 (5th Cir. 2002). *Alleyne*, like its predecessors, including *Apprendi* of which *Alleyne* is an extension, is likewise not retroactively applicable to cases on collateral review. *In re Kemper*, 735 F.3d 211 (5th Cir. 2013) *citing Foster v. Quarterman*, 466 F.3d 359, 369–70 (5th Cir. 2006) (stating that *Blakely, Ring*, and *Apprendi* are not retroactively applicable to cases on collateral review); *United States v. Olvera*, 775 F.3d 726, 730 (5th Cir. 2015) (citing cases from "every circuit to have examined the issue, none of which has decided that *Alleyne* is retroactive"[7]). Consequently, neither *Apprendi* nor *Alleyne* afford Valdez any

---

[7] *Hughes v. United States,* 770 F.3d 814, 817–19 (9th Cir.2014); *In re Mazzio,* 756 F.3d 487, 489–91 (6th Cir.2014); *United States v. Reyes,* 755 F.3d 210, 212–13 (3d Cir.2014), *cert. denied,* —— U.S. ——, 135 S.Ct. 695, —— L.Ed.2d —— (2014); *United States v. Redd,* 735 F.3d 88, 91–92 (2d Cir.2013) (*per curiam*); *In re Moss,* No. 13–14570–D, 2013 WL 10252931, at *1–3 (11th Cir. Oct. 23, 2013) (*per curiam*); *United States v. Stewart,* 540 Fed.Appx. 171, 172 n. 1 (4th Cir.2013) (*per curiam*); *In re Payne,* 733 F.3d 1027, 1029–30 (10th Cir.2013); *Simpson v. United States,* 721 F.3d 875, 876 (7th Cir.2013). *See also Clinton v. Young,* 2013 WL 5233712, *1-2 (W.D. La. 2013) *citing Mingo v. United States,* 2013 WL 4499249, at *2 (W.D. Mich. 2013) (denying § 2255 motion because "The holding in *Alleyne* does not qualify as a new 'watershed rule.'"), *United States v. Eziolisa,* 2013 WL 3812087, at *3

relief.

Furthermore, even if *Alleyne* or *Apprendi* applied retroactively, Valdez is not entitled to relief. The jury verdict form, did, in fact, contain the specific amount of drugs necessary to find Valdez guilty of the charged offense and to trigger the applicable statutory sentencing range, ten years to life imprisonment. [rec. doc. 1076]. Further, as noted by the government, the court read the jury verdict form to the jury as follows, expressly telling the jurors the amount of drugs which they had to find in order to convict Valdez: "Guilty of conspiracy to possess - - we have a typo on 'possess,' but it's possess with the intent to distribute 5 kilograms or more of cocaine, 280 grams or more of cocaine base or - - remember I told you about the 'or' - - 1,000 kilograms or more of marijuana." [rec. doc. 1221-7, pg. 70, tr. trs. pg. 1730]. The jury was thus instructed, and, in fact, did find the amount of drugs necessary to convict Valdez.

Finally, the Court notes that Valdez' mandatory life sentence was based

(S.D. Ohio 2013) (holding that because *Alleyne* neither places any primary conduct beyond the power of the United States to punish, nor adopts a "watershed" rule, it does not apply retroactively to a motion for relief from sentence filed under § 2255), *Carter v. Coakley*, 2013 WL 3365139, at *4 (N.D. Ohio 2013) (holding that *Alleyne* did not provide relief under § 2241 because "*Alleyne* is not such an intervening change in the law and does not decriminalize the acts which form the basis of Petitioner's conviction."), *Smith v. Holland*, 2013 WL 4735583 (E.D. Ky. 2013), *Simpson,*, 721 F.3d at 876, *United States v. Ailsworth,* 2013 WL 4011072, at *1 (D. Kan. 2013), *United States v. Stewart*, 2013 WL 4553349 (S.D. Miss. 2013) and *United States v. Cantu-Rivera*, 2013 WL 3873281 (S.D. Tex. 2013); *Acosta v. United States*, 2013 WL 6172123, *3 (N.D. Tex. 2013).

upon his prior felony drug convictions.[8]  *Alleyne* left intact the rule that

enhancements based on the fact of a prior conviction are an exception to the

general rule that facts increasing the prescribed range of penalties must be

presented to a jury.  *United States v. Wallace*, 759 F.3d 486, 497 (5th Cir. 2014)

*citing Alleyne*, 133 S.Ct. at 2160 n. l, *United States v. Akins*, 746 F.3d 590, 611 (5th

Cir. 2014) and "sister circuit" decisions.[9]

Since the jury found the amounts necessary to trigger the statutory

sentencing range applicable to Valdez, and his life sentence was ultimately based

on recidivism as a consequence of his prior felony drug offenses, neither

*Apprendi*, nor *Alleyne* were violated.

**Actual Innocence**

To the extent that Valdez asserts a free standing claim of actual innocence,

or asserts that any of his procedurally barred claims may now be considered, those

claims are likewise without merit.

The Fifth Circuit has repeatedly held that a free standing claim of actual

innocence does not in itself provide a basis for *habeas corpus* relief.  Rather, it is a

---

[8]rec. doc. 1214, pgs. 41-47, 59-60.

[9]*United States v. Harris,* 741 F.3d 1245, 1249 (11th Cir. 2014); *United States v. McDowell*, 745 F.3d 115, 123–24 (4th Cir. 2014); *United States v. Cooper*, 739 F.3d 873, 884 (6th Cir. 2014); *United States v. Boyce*, 742 F.3d 792, 799 (7th Cir. 2014); *United States v. Blair*, 734 F.3d 218, 226–28 (3rd Cir. 2013); *United States v. Carrigan*, 724 F.3d 39, 51 n. 4 (1st Cir. 2013); *United States v. Rucker*, 545 Fed.Appx. 567, 573 (8th Cir. 2013) (*per curiam*) (unpublished).

gateway through which a *habeas* petitioner must pass to have an otherwise barred constitutional claim considered on the merits. *Dowthitt v. Johnson*, 230 F.3d 733, 741–42 (5th Cir. 2000); *Foster v. Quarterman*, 466 F.3d at 367-368; *Herrera v. Collins*, 506 U.S. 390, 400 (1993).

In *Schlup v. Delo*, the Supreme Court explained that a petitioner seeking to overcome procedural default by showing "actual innocence" must establish that it is more likely than not that, in light of the new evidence, no juror, acting reasonably, would have voted to find the petitioner guilty beyond a reasonable doubt. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Wright v. Quarterman*, 470 F.3d 581, 590 (5th Cir. 2006); *Foster v. Quarterman*, 466 F.3d at 367.

Prisoners asserting actual innocence as a gateway to review must (1) present "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence"; (2) "that was not presented at trial"; and (3) must show, that in light of this new evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell,* 547 U.S. 518, 537 (2006)*; Schlup v. Delo*, 513 U.S. at 299.

Valdez offers no newly discovered evidence in the form of scientific evidence, physical evidence, or trustworthy eyewitness testimony.  His claim of actual innocence therefore does not satisfy the gateway requirements for review by

this court and accordingly, provides no basis for relief.

**Sufficiency of the Evidence**

The Fifth Circuit has held that sufficiency of the evidence claims are not cognizable on a collateral motion under § 2255. *Forrester v. United States*, 456 F.2d 905, 907 (5ᵗʰ Cir. 1972) and *Mendoza v. United States,* 365 F.2d 268, 272 (5ᵗʰ Cir. 1966). Decisions from this district have held that sufficiency of the evidence claims are neither constitutional nor jurisdictional and are therefore subject to procedural default if not raised on direct appeal. *United States v. Moore*, 2013 WL 1500859, *2 (W.D. La. 2013); *United States v. Jackson*, 2015 WL 5840073, *3 (W.D. La. 2015).

Further, even if petitioner's claim is cognizable and not defaulted, the claim is without merit.[10] Under *Jackson v. Virginia*[11], on sufficiency of the evidence review, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319; *United States v. Garcia*, 995 F.2d 556, 561 (5ᵗʰ Cir. 1993). Review of the sufficiency of the evidence does not include review of the weight of the evidence

---

[10]By Reply Valdez suggests that ineffective assistance of counsel constitutes cause for his default. [*See* rec. doc. 1333, pg. 16]. Without making any finding as to this argument, the undersigned nevertheless will briefly discuss the merits of the claim.

[11]443 U.S. 307 (1979).

nor the credibility of the witnesses, as those determinations are the exclusive province of the jury. *United States v. Jackson*, 2015 WL 5840073, *4 *citing United States v. Young*, 107 Fed.Appx. 442, 443 (5ᵗʰ Cir. 2004); *United States v. Garcia*, 995 F.2d 556, 561 (5ᵗʰ Cir. 1993)*; United States v. Greenwood*, 974 F.2d 1449,1458 (5ᵗʰ Cir. 1992). Accordingly, "whether judges doubt the credibility of a witness, even an accomplice witness cooperating with the government, is beside the point...." *Greenwood,* 974 F.2d at 1458. All credibility choices and conflicting inferences are to be resolved in favor of the verdict. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5ᵗʰ Cir.2005). The reviewing court is not authorized to substitute its interpretation of the evidence for that of the fact finder. *Alexander v. McCotter*, 775 F.2d 595, 598 (5ᵗʰ Cir.1985).

To show that a defendant was part of a conspiracy to distribute illegal drugs, the government must prove "(1) an agreement between two or more persons to violate the narcotics laws, (2) the defendant's knowledge of the agreement, and (3) the defendant's voluntary participation in the conspiracy." *United States v. Zamora*, 661 F.3d 200, 209 (5ᵗʰ Cir. 2003) (citation omitted). A jury may "infer the existence of an agreement [to a conspiracy] from . . . testimony and the other circumstantial evidence.*" Id. citing United States v. Garcia*, 567 F.3d 721, 732 (5ᵗʰ Cir. 2009). "An express agreement is not required; a tacit, mutual agreement with common purpose, design, and understanding will suffice." *Id. citing United States*

*v. Lewis*, 476 F.3d 369, 383 (5ᵗʰ Cir. 2007) (quotation marks and citation omitted).

In this case, there was more than sufficient evidence to support Valdez' drug conspiracy conviction. The jury heard the testimony of Valdez' co-conspirators, including Eric Joseph Alexander and Rodney Ontavious Gatlin, as well as that of his co-conspirator family members, Maria Aide Delgado (sister) and Sabina Luna Valdez (mother) and Victor Luna Valdez (brother). The evidence demonstrated Valdez' knowledge, agreement and voluntary participation in the charged conspiracy. Alexander and Gatlin both testified that Valdez was one of the family members who delivered marijuana and cocaine to Lafayette.[12] The evidence demonstrated that, after the vehicle owned by Valdez, and occupied by Valdez, his mother and his brother, was stopped at the entry point between Mexico and Texas, seven packages of cocaine were found on Valdez' mother.[13] The evidence also demonstrated that on three occasions vehicles registered to Valdez' company contained marijuana or large amounts of money.[14]

While Valdez relies on the testimony of his family members and their affidavits attached to the instant Motion, the jury heard their trial testimony and

---

[12]rec. doc. 1221-1, pg. 154-162, tr. pgs. 682-691; rec. doc. 1221-2, pg. 86-87, 9-92, 94-103, 132; tr. pgs 833-834, 838-839, 841-850, 879.

[13]rec. doc. 1221-1, pg. 194-210, tr. pg. 723-739.

[14]rec. doc. 1221-3, pg. 12-14, 27-31, 51-52, 74-75; tr. pg. 914-916, 929-933, 953-954, 976-977; rec. doc. 1221-4, pg. 40-42, 50-51, 57; tr. pg. 1105-1107, 1115-1116, 1119.

obviously did not find their version of events credible. Valdez essentially urges this Court to make credibility determinations and to weigh the evidence in his favor. However, on a sufficiency of the evidence review, it is not the province of this Court to make credibility determinations or to review the weight of the evidence accepted by the jury. Sufficiency of the evidence review is limited to "record evidence." *Jackson v. United States*, 2015 WL 5840073, at *3 *citing Herrera v. Collins*, 506 U.S. 390, 402 (1993); *Jackson v. Virginia*, 443 U.S. at 318. Such review "does not extend to nonrecord evidence, including newly discovered evidence." *Id.* Thus, the affidavits offer Valdez no support for his sufficiency of the evidence claim.

Viewing the record evidence in the light most favorable to the prosecution as is required by *Jackson* and its progeny, the evidence presented at trial was more than sufficient to sustain petitioner's drug conspiracy conviction. This Court finds that "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

**Service of § 851 Notice**

Valdez argues that service of the § 851 Notice was insufficient. This Court agrees with the government that this claim is procedurally defaulted. The filing of a § 851 Notice does not have constitutional or jurisdictional implications. *United*

*States v. Dodson*, 288 F.3d 153, 159-160 (5th Cir. 2002); *Carachuri-Rosendo v. Holder*, 560 U.S. 563, 569 at fn. 6 (2010) *citing Almendarez–Torres v. United States*, 523 U.S. 224, 247 (1998) ("§ 851's procedural safeguards are not constitutionally compelled"); *see also United States v. Castro-Coello*, 474 F.Supp.2d 853, 862 (S.D. Tex. 2007) ("The Fifth Circuit has never found § 851 to be a constitutional requirement."); *United States v. Ceballos*, 302 F.3d 679 (7th Cir. 2002) (holding the notice provision of 21 U.S.C. § 851 is not jurisdictional); *Hietman v. United States*, 2003 WL 22364310, *2 (N.D. Tex. 2003) (same). Accordingly, review under § 2255 is not available without a showing of both cause for the procedural default and actual prejudice resulting from the error. This petitioner has not done.

Further, petitioner has not demonstrated that the error resulted in a complete miscarriage of justice, or could not have been raised on direct appeal. *United States v. Cervantes*, 132 F.3d at 1109; *United States v. Pierce,* 959 F.2d at 1301. In fact, the claim was raised and rejected on direct appeal by the Fifth Circuit. *United States v. Valdez*, 548 Fed. Appx. 995, 1005 (5th Cir. 2013). It is well-settled that claims which have been raised and considered on direct appeal cannot be re-considered in a subsequent § 2255 motion. *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986); *United States v. Segler,* 37 F.3d 1131, 1134

(5th Cir.1994); *United States v. Goudeau*, 512 Fed.Appx. 390, 393 (5th Cir. 2013).

## II. Merits Review

## A. Ineffective Assistance of Counsel

Petitioner contends that he was denied the effective assistance of counsel for the following reasons: (1) failure to recognize two "fatally flawed" grand jury indictments; (2) failure to file a Motion to Dismiss presenting "transference of guilt"; (3) failure to present "fatal variances" between the second superceding indictment and the evidence; (4) failure to present/preserve the issue that the overt acts in the indictment were statutorily barred; (5) failure to challenge the increased drug amounts in the second superceding indictment; (6) failure to present a Sixth Amendment Constitutional speedy trial claim; (7) failure to fully cross-examine Agent Catalan; (8) failure to explain the consequences of the filing of a § 851 notice; (9) failure to allow petitioner to testify; (10) failure to object to the prosecutor's misconduct; (11) failure to request a special verdict form specifying which drug was involved in the conspiracy; (12) failure to investigate to prepare a meaningful defense; (13) counsel had a conflict of interest; (14) failure to file a Motion to Dismiss on Speedy Trial Act grounds; (15) inability to challenge the § 851 Notices due to Counsel's Inaction; (16) failure to file a Motion for Judgment

27

of Acquittal; (17) failure to assert a double jeopardy challenge; and (18) failure to file a Motion to Suppress wiretap recordings. For the following reasons, these claims are without merit and do not warrant *habeas* relief.

Courts can consider claims of ineffective assistance of counsel that are brought for the first time in a § 2255 motion. *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996). To prevail on an ineffective assistance of counsel claim, a petitioner must establish that (1) his attorney's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668 (1984).

The burden is on the petitioner to show that counsel's representation fell below an objective standard of reasonableness. *Id.* at 688. Judicial scrutiny of counsel's performance must be "highly deferential," and the court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's alleged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. at 689. The court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. (citation omitted). Thus, this court's review "strongly presum[es]

that counsel has exercised reasonable professional judgment." *United States v. Payne*, 99 F.3d 1273, 1282 (5th Cir. 1996) *quoting Lockhart v. McCotter*, 782 F.2d 1275, 1279 (5th Cir. 1986).

     *Strickland'*s prejudice element requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.[15] A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir. 2001). A petitioner must affirmatively prove prejudice. *Deville v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994); *Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995); *Earhart v. Johnson*, 132 F.3d 1062,1066 (5th Cir. 1998). Self serving conclusory statements that the outcome would have been different "fall far short of satisfying *Strickland'*s prejudice element." *Sayre*, 238 F.3d at 635.

---

[15]The *Strickland* court outlined the extent of prejudice that must be established by the defendant:

    An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of the criminal proceeding if the error had no effect on the judgment. *Cf. United States .v Morrison,* 449 U.S. 361, 364-65 (1981).

    Defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability exists if the probability is sufficient to undermine confidence in the outcome.

    When a defendant challenges a conviction , the question is whether there is reasonable probability that absent the errors the fact-finder would have a reasonable doubt respecting guilt.

*Strickland, supra*, at pages 691-692.

Allegations of a mere possibility of a different outcome are insufficient to establish prejudice. *Lamb v. Johnson*, 179 F.3d 352, 359 (5th Cir. 1999).

The Supreme Court has reiterated that "[s]urmounting *Strickland*'s high bar is never an easy task." *Cullen v. Pinholster,* 563 U.S. 170,198 (2011). Because both *Strickland* factors, that of deficient performance and prejudice, must be satisfied, "an ineffective assistance contention may be rejected on an insufficient showing of prejudice, without inquiry into the adequacy of counsel's performance." *Strickland,* 466 U.S. at 689-94.

**Failure to file a Motion to Dismiss on Speedy Trial Act grounds**

Petitioner alleges that William Dauphin, his first appointed counsel of record was ineffective for failing to file a Motion to Dismiss on the basis of a Speedy Trial Act violation. He further suggests that his trial counsel, Mr. Richard was ineffective for failing to preserve this issue for appeal by withdrawing the previously filed Motion to Dismiss on Speedy Trial Act grounds without his consent.[16] For the reasons set forth below, there was no Speedy Trial Act violation in petitioner's case. Accordingly, counsels' failure to file a Motion to Dismiss on

---

[16]It is unclear whether Valdez faults Mr. Richard for failing to preserve the statutory speedy trial right for appeal. Valdez cites the Fifth Circuit's decision on direct appeal with respect to the Sixth Amendment right to speedy trial, but he additionally complains about Mr. Richard's having withdrawn his motion to dismiss on Speedy Trial Act grounds. It appears that Valdez has failed to recognize that these are separate claims. Accordingly, the Court has addressed both claims separately. The Constitutional claim is addressed below.

these grounds, and counsel's failure to preserve the issue for appeal, does not cause counsel's performance to fall below an objective level of reasonableness. *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002); *United States v. Preston*, 209 F.3d 783, 785 (5th Cir. 2000).

As this Court explained with regard to the § 2255 Motion of co-conspirators Sabina Luna Valdez, Valdez' mother, and Maria Aide Delgado, Valdez' sister, there has been no Speedy Trial Act violation. *See United States v. Valdez*, 2013 WL 696914, *15-17 (W.D. La. 2013); 06-60074-05, rec. doc. 1283. The Speedy Trial Act requires that "the trial of a defendant . . . shall commence within seventy days from the filing date . . . of the . . . indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). However, several "periods of delay" are "excluded . . . in computing the time within which the trial of any such offense must commence[,]" including a "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion. . . . " 18 U.S.C. § 3161(h), (h)(1)(D).

There is a statutory exclusion for "[a] reasonable period of delay when the defendant is joined for trial with a co-defendant as to whom the time for trial has not run and no motion for severance has been granted." Under this exclusion, "the

speedy trial clock does not begin to run in a multi-defendant prosecution until the last co-defendant makes his initial appearance in court."*United States v. Harris*, 566 F.3d 422, 428 (5th Cir. 2009).[17] In this case the exclusion tolls the seventy-day period until May 16, 2007, the date of the arraignment of Delgado [rec. doc. 186], the last co-defendant to be arraigned under the original indictment.

This case was certified as complex as early as February 15, 2007 because there were multiple defendants located in both Texas and Louisiana, and the voluminous amount of discovery involved, making it impossible for the parties to prepare for trial within the deadlines set forth in § 3161. *Valdez, citing* rec. doc. 126. The types of factors the court must consider in granting a continuance, include "[w]hether the case is so unusual or so complex . . . that it is unreasonable to expect adequate preparation . . . within the time limits established by this section." 18 U.S.C. § 3161(h)(7)(B)(ii).

The district court has "discretion-within limits and subject to specific procedures – to accommodate limited delays for case-specific needs." *Valdez, quoting Zedner v. United States,* 547 U.S. 489, 499 (2006). The Fifth Circuit has held that a district court's finding that a case is complex constitutes a sufficient ground to satisfy the statutory requirements for a continuance. *United States v.*

---

[17]There were originally thirteen named defendants and no one was severed, including Valdez.

*Bieganowski*, 313 F.3d 264, 282 & n. 15 (5th Cir. 2002); *United States. v.*

*Edelkind*, 525 F.3d 388, 397 (5th Cir. 2008).

A superseding indictment was filed in this case on November 14, 2007. [rec.

doc. 235]. In *United States v. Bermea*, 30 F.3d 1539, 1567 (5th Cir. 1994), the

Fifth Circuit articulated a fear that the government could circumvent the speedy

trial guarantee through the simple expedient of obtaining superseding indictments

with minor corrections. However, the "case presents a different profile" when the

government seeks to "widen the scope of the criminal investigation so as to try

[other] conspirators" and is not "merely correcting the indictment." *United States*

*v. Parker*, 505 F.3d 323, 327 (5th Cir. 2007) . In that case, "[t]here is no abuse of

the superseding indictment system" and the starting point for the speedy trial clock

is thus reset to the date of the arraignment on the superseding indictment. *Id.*

The record reflects that the superceding indictment did not merely make

corrections to the indictment. This superseding indictment added charges of a

money laundering conspiracy, and several substantive counts relating to that

conspiracy. These changes widened the scope of the criminal investigation and

reset the trial clock. The last defendants to be arraigned under this second

superseding indictment were Wendy Dugas Hossley and Yvette Francis Eaglin on

December 7, 2007. [rec. docs. 289 and 290]. The speedy trial clock was therefore

reset and began to run again on that date.

The Speedy Trial Act expressly excludes from the Speedy Trial Act time limit:

> [a]ny period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.

*Id. citing* 18 U.S.C. § 3161(h)(7)(A).

The case had been set for trial on June 9, 2008. [rec. doc. 267]. On May 12, 2008, Valdez filed a Motion to Continue [rec. doc. 335], which, although opposed by the government [rec. doc. 344], was granted by the Court on May 20, 2008, after conducting an "ends of justice analysis." [rec. doc. 369]. As noted below, the trial which began in January, 2009 ended in mistrial on Valdez' motion. [rec. doc. 525]. The Court granted Valdez and his co-defendants' motion for a mistrial on January 23, 2009 due to Mr. Wolfe's medical condition. [rec. doc. 525]. The Speedy Trial Act expressly excludes an additional seventy days from the Speedy Trial Act time limit following a declaration of a mistrial. 18 U.S.C. § 3161(e).

Trial was reset but on October 9, 2009, Valdez filed another motion to continue along with a waiver of speedy trial protections, to allow new counsel, Mr.

Richard, adequate time to prepare. [rec. docs. 639 and 640]. The court granted the Motion, after conducting an "ends of justice analysis." [rec. doc. 648].

Trial was reset for August 30, 2010. [rec. doc. 673]. However, Valdez and his co-defendants filed another motion to continue, with another waiver of speedy trial protections, which was granted over the government's objection, due to the internal investigation of the prosecuting AUSA and lead case agents. [rec. doc. 796, 797, 800, 1240 and 1241].

The speedy trial clock was also tolled during the pendency of the defendants' motions. *Valdez*, 2013 WL 696914 at *16 *citing* 18 U.S.C. §3161(h)(1)(D). During this entire time period, several defense motions were filed.[18] Notably, several defense motions were filed after the last trial continuance, which likewise tolled the speedy trial clock.[19] The last such motion to be determined by the court, Valdez' Motion to Dismiss the second superceding

---

[18]*Id. citing* rec. docs. 99, denied by 376; 100, denied in part by 349, and granted in part by 349; 101, granted by 337and 338, appeal denied by 354, and reversed on appeal by 424 and 425; 105, denied by 350; 102, denied by 377; 335, granted by 369; 329, granted by 369; 353, denied by 431; 385, denied by 387; 389, granted by 391; 423, granted by 428; 427, granted by 437; 447, granted in part and denied in part by 473; 448, terminated by 473; *see also* 494, granted in part by 505; 495, deferred by 505; 510, denied by 813; 613, granted by 615; 617, granted by 618; 771, withdrawn by 780; 782, denied as moot by 784; 796, granted by 802; 798 and 799 granted by 811.

[19]rec. docs. 823, granted by 826; 829, denied and dismissed as moot by 973; 854, granted by 873; 878, granted by 905; 919, denied by 1039; 920, granted by 941; 924 granted by 935; 1025, denied by 1033; 1027, withdrawn by 1031.

indictment was denied by the court on January 31, 2012 after a three day

evidentiary hearing, and a lengthy report and recommendation by Magistrate

Judge Hill, only six days before Valdez' trial began on February 6, 2012.[20]

Accordingly, the Speedy Trial Act was not violated in this case. Counsel

were not ineffective with respect to petitioner's rights under the Speedy Trial Act.

Further, to the extent that Valdez claims that his counsel was ineffective for

failing to consult with him to obtain approval prior to withdrawing Valdez' motion

to dismiss based on the Speedy Trial Act, that claim is without merit. As noted by

the Fifth Circuit on direct appeal, counsel may waive a defendant's rights under

the Speedy Trial Act by withdrawing a Motion based on its protections as such

rights are not fundamental rights conferred by the Constitution which require a

defendant's personal approval, but rather are statutory rights which counsel is "at

liberty to withdraw. . . ." *United States v. Valdez*, 548 Fed. Appx. at 1003; *see

also Gonzalez v. United States,* 553 U.S. 242, 249 (2008) *citing New York v. Hill,*

528 U.S. 110, 115 (2000) (holding that an attorney, acting without indication of

consent from his client, could waive his client's statutory right to a speedy trial

pursuant to the Interstate Agreement on Detainers).

Moreover, in light of the above analysis, even if pressed, the motion was

---

[20]rec. docs. 919, 949, 950, 959, 1004, 1039, 1049.

without merit.  Counsel need not file, or in this case continue to press, a futile motion. *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002)  *citing Koch v. Puckett,* 907 F.2d 524, 527 (5th  Cir. 1990).   There is no action of defense counsel that could be considered objectively unreasonable.

Finally, in light of the above procedural history, it is clear that any delays and continuances of the trial were for the benefit of Valdez.  As such, Valdez has shown no actual prejudice as a result of his counsels' alleged inactions.  His conclusory statements to the contrary are insufficient and  "fall far short of satisfying *Strickland'*s prejudice element."  *See Sayre*, 238 F.3d at 635; *Lamb*, 179 F.3d at 359.  Therefore, petitioner's ineffective assistance of counsel claim on the basis of failing to file and/or withdrawing a motion to dismiss on speedy trial grounds has no merit.

## Richard's Failure to present a Sixth Amendment Constitutional speedy trial claim

Petitioner argues that trial counsel was ineffective for failing to assert a Constitutional Sixth Amendment speedy trial claim so that the claim could be asserted on direct appeal.  In support, Valdez cites the Fifth Circuit's decision where the court found that such a claim had been waived by Valdez' failure to raise the claim in the district court.

As this Court explained with respect to co-conspirators Sabina Luna Valdez

and Maria Aide Delgado, Valdez' mother and sister, respectively, to the extent Valdez argues that his Sixth Amendment right to a speedy trial was violated, that claim is likewise without merit. *See Valdez*, 2013 WL 696914 at *17; 06-60074-05, rec. doc. 1283. In *United States v. Bieganowski*, 313 F.3d 264, 284 (5th Cir. 2002), the court noted that "[i]t will be the unusual case . . . where the time limits under the Speedy Trial Act have been satisfied but the right to a speedy trial under the Sixth Amendment has been violated." This case is no exception.

In analyzing a Sixth Amendment speedy trial claim, this Court balances, among other relevant circumstances, (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant timely asserted his right; and (4) any prejudice resulting to the defendant because of the delay. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). None of the enumerated factors alone is sufficient to establish a violation of the Sixth Amendment; "[r]ather, they are related factors and must be considered together with such other circumstances as may be relevant." *Barker*, 407 U.S. at 533. The first three factors should be used to determine whether the defendant bears the burden to put forth specific evidence of prejudice (or whether it is presumed). *United States v. Bergfeld,* 280 F.3d 486, 490 (5th Cir. 2002). If "the first three factors weigh heavily in the defendant's favor," prejudice may be presumed. *Valdez*, 2013 WL 696914 at *17 *quoting*

*United States v. Parker*, 505 F.3d 323, 328 (5th Cir. 2007) (quotation omitted). If they do not, the defendant "must demonstrate actual prejudice." *Id.*

The length of delay in this case, from the date of original indictment (November 16, 2006) until the date petitioner's trial began (February 6, 2012), was approximately five years and two and one half months. In assessing the reasons for the delay, however, the Court has noted that "pretrial delay is often both inevitable and wholly justifiable." *Id. quoting Doggett v. United States*, 505 U.S. 647, 656 (1992).

The Fifth Circuit has also recognized that the extent to which this observation rings true will necessarily vary with the complexity of the case. *Id. citing Bieganowski*, 313 F.3d at 284–85. Thus, "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge" such as the one with which Valdez was charged. *Barker,* 505 U.S. at 531.

The courts in this Circuit have held that delays of less than five (5) years are not sufficient, by duration alone, to presume prejudice. *Parker,* 505 F.3d at 327, *United States v. Serna–Villarreal*, 352 F.3d 225, 232 (5th Cir. 2003). Here, the delay was just over the five year benchmark. Therefore, the Court finds that the length of the delay weighs slightly in favor of petitioner.

The reasons for the delay do not favor petitioner when, as here, the delay

was largely a result of the complexity of the case, the voluminous amount of discovery, the number of co-defendants, the myriad pretrial motions and the numerous requests by the defendants for trial continuances. Moreover, much of the delay in this case was due to Valdez himself. It was Valdez who filed three successful motions to continue the trial of this case. He insisted that Mr. Wolfe be permitted to continue his representation after the January 2009 mistrial, causing over an eight month delay. Valdez persisted in prosecuting meritless Motions to Dismiss the original, superceding and second superceding indictments based on alleged prosecutorial misconduct causing a delay of over eight additional months.

Further, Valdez has presented no evidence that the government act[ed] in bad faith, intentionally holding up prosecution for the purpose of prejudicing the defendant. *Parker*, 505 F.3d at 329; *United States v. Hernandez*, 457 F.3d 416, 421 (5th Cir. 2006). The record demonstrates that the government acted diligently considering the number of defendants and the amount of discovery involved. In fact, the government opposed two of Valdez' requests for continuances. Although the government may be deemed responsible for conduct which necessitated the investigation by the Department of Homeland Security and Department of Justice, given the reasoning of Judge Hill in his Report and recommendation on Valdez' Motion to Dismiss the second superceding indictment, at best such conduct falls

within the "official negligence" category.[21]  The delay attributable to this

investigation was only a small portion of the total delay, approximately nine

months.  Thus, the majority, if not all of the delay in this case may be deemed

legitimate. The second factor therefore weighs heavily against Valdez.

Valdez did not assert his right to a speedy trial, rather, he filed four motions

to continue the trial, three of which were granted.  While the record reveals that

Valdez did file a motion to dismiss under the Speedy Trial Act, which was

subsequently withdrawn by counsel, the Fifth Circuit in *United States v. Frye*, 489

F.3d 201 (5th Cir. 2007), held that Motions to Dismiss based on violations of the

Speedy Trial Act do not count as assertions of a defendant's right to speedy trial.

The *Frye* court reasoned that the applicable right is the right to a speedy trial; an

assertion of that right is a demand for a speedy trial, which will generally be an

objection to a continuance or a motion asking to go to trial.  At the very least, a

---

[21]In *Doggett*, the Court explained that "different weights are to be assigned to different reasons for delay." *Doggett,* 505 U.S. at 657. If the government diligently pursues a defendant from indictment to arrest, a speedy trial claim will always fail without a showing of actual prejudice. *Id.* at 656. On the other hand, if "the Government had intentionally held back in its prosecution . . . to gain some impermissible advantage at trial," that fact weighs heavily against the government. *Id.* Finally, the *Doggett* Court explained that:

> Between diligent prosecution and bad-faith delay, official negligence in bringing an accused to trial occupies the middle ground. While not compelling relief in every case where bad-faith delay would make relief virtually automatic, neither is negligence automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him.

*Id.* at 656–57.

defendant's assertion of his speedy trial rights should manifest "his desire to be tried promptly." *United States v. Litton Sys., Inc.*, 722 F.2d 264, 271 (5th Cir. 1984). Under the court's reasoning in *Frye*, the third factor weighs heavily against Valdez.

In the final step of the *Barker* analysis, this Court examines the degree of prejudice that attached to Valdez because of the delay. Because the first three *Barker* factors do not weigh heavily in Valdez' favor, he is not relieved of the burden of demonstrating actual prejudice. Valdez fails to make a convincing showing of any actual prejudice. The speedy trial right serves to protect three interests: "to prevent oppressive pretrial incarceration," "to minimize anxiety and concern of the accused," and "to limit the possibility that the defense will be impaired." *Parker,* 505 F.3d at 330; *Frye,* 489 F.3d. at 739-40 *quoting Barker*, 407 U.S. at 532. Valdez has not demonstrated that the delay in his case undermined any of these interests. He cannot show that his pre-trial incarceration was oppressive; although Valdez was detained until the internal investigation began, he was released thereafter. While his incarceration may have caused him anxiety and concern, this hardship would not have been lessened had this case moved more rapidly. Further, "psychological and economic strain are . . . insufficient to establish the prejudice necessary to find a violation of his Sixth Amendment

rights", nor will anxiety about one's reputation and private life during pretrial delay alone suffice. *Bieganowski,* 313 F.3d at 285. Finally, Valdez has not alleged any credible facts to demonstrate that his defense was in any way impaired. Any such allegations by Valdez are affirmatively belied by the trial transcript, which shows no evidence of defense impairment. Accordingly, the remaining *Barker* factor also weighs against petitioner.

To the extent that prejudice may arguably be presumed as a result of the length of the delay, any presumption of prejudice is extenuated in this case due to Valdez' acquiescence as evidenced not only by his complicity with the delay but also by the fact that he was in large part responsible for the delay, and as such has been persuasively rebutted. *See Doggett*, 505 U.S. at 658 (footnotes and citations omitted). Weighing any arguably presumed prejudice against the other factors, Valdez is not entitled to relief for violation of his Constitutional right to a speedy trial. *See Doggett,* 505 U.S. at 655-56 (noting that "presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria . . . it is part of the mix of relevant facts, and its importance increases with the length of the delay.").

For these reasons, no Sixth Amendment violation occurred in this case. Had a timely Motion to Dismiss been filed by counsel, this Court would have rejected

Valdez' claims under the Sixth Amendment. Counsel therefore cannot be deemed deficient for failing to file this frivolous, non-meritorious motion.

**Failure to fully cross-examine Agent Catalan**

Valdez argues that his counsel was ineffective for failing to cross-examine Agent Catalan regarding the internal investigation, the removal of AUSA Grayson as the lead prosecutor purportedly as a result of the internal investigation, the language used by Magistrate Judge Hill in his Report and Recommendation recommending denial of Valdez' Motion to Dismiss the second superceding indictment, the alleged unidentified misstatements by Catalan before the grand jury, and alleged withholding of unidentified information by Catalan in his testimony before the grand jury.

As correctly noted by the government, several of the areas of proposed cross-examination would have been either inadmissible or impermissible. Those areas include the internal investigation, the removal of AUSA Grayson as the lead prosecutor purportedly as a result of the internal investigation and the language used by Magistrate Judge Hill in his Report and Recommendation recommending denial of Valdez' Motion to Dismiss the second superceding indictment. This Court cannot envision any circumstance under which this evidence would have been allowed. The remainder of the alleged areas of cross-examination were

extensively analyzed and rejected by the court in connection with Valdez' Motion to Dismiss the second superceding indictment. More specifically, the court found that Agent Catalan's testimony before the grand jury was either not false or the result of simple mistake, and not an intentional effort to mislead or present knowingly false testimony to the grand jury. For example, the court found the inclusion of "cocaine" in overt act (a) was not the result of perjury by Agent Catalan, nor any attempt by the government to introduce inaccurate facts before the 2009 trial jury. [rec. doc. 1004, pgs. 47-51]. With respect to overt acts (b) and (c) (formerly (d) and (f)) regarding the April 27, 2004 and May 21, 2004 visits to the residence of Alexander, the court found that Agent Catalan's testimony before the grand jury was not false. Although Agent Catalan failed to mention that on each occasion there was an additional passenger in the vehicle in which the family member trio were traveling, an unidentified Hispanic female and Felipe Aranda, respectively,he was not asked if the family members were the only occupants. Therefore, AUSA Grayson did not suborn perjury. The court found the information was not relevant given that there was no evidence to implicate either additional passenger in the charged conspiracy. [*Id*. at pgs. 51-55]. With respect to overt act (d) (formerly (j)) regarding the November 26, 2004 border stop, the court found that Agent Catalan was not attempting to intentionally mislead the

November 14, 2006 grand jury and his failure to recognize the factual errors in the prosecutorial memorandum prepared by AUSA Grayson from which he testified did not constitute perjury. The court additionally found that Grayson's errors contained in the prosecutorial memorandum were the result of simple mistake. The court found that there was no evidence that the errors were knowingly or intentionally included with the intent to present knowingly false testimony to the grand jury. [*Id*. at pgs. 56-60]. Finally, although the court found that Agent Catalan had improperly repeated one witnesses' testimony to another witness during the 2009 trial, the court concluded that those witnesses (Jennifer (Neveu) Mcknight and Deborah Mcknight) were relevant to the government's case against Wyatt, regarding the date his business, B & M Auto and 4x4 came into existence, and had no relevance whatsoever to the criminal charges against Valdez. [*Id.* at pgs. 77-78, 99 and 101].

Under these circumstances, Valdez has not established that his counsel's alleged failure to cross-examine Agent Catalan on these subjects caused him any prejudice. Had counsel presented this testimony, the jurors, like this Court, would have likely found the evidence irrelevant and unimportant thereby assigning the evidence little, if any, weight. Thus, there is no reasonable probability that presentation of this evidence would have changed the verdict. *Strickland*, 466

U.S. at 694.  Petitioner's self serving conclusory statements that the outcome of his trial would have been different "fall far short of satisfying *Strickland's* prejudice element." *Sayre*, 238 F.3d at 635.

Furthermore, because decisions regarding cross-examination are strategic, they usually "will not support an ineffective assistance claim." *United States v. Bernard*, 762 F.3d 467, 472-473 (5ᵗʰ Cir. 2014).   That is the case here.  The record reveals that counsel effectively cross-examined Agent Catalan on aspects of his investigation and grand jury testimony which were relevant to Valdez, thereby undermining his credibility.   Counsel vigorously cross-examined Catalan and established that he had testified incorrectly that Valdez was the driver of the vehicle during the April 2004 stop, and previously testified before the grand jury without naming a fourth passenger who was in the vehicle.[22]   He further established that Valdez was not the driver of the vehicle during the May 2004 stop and that he previously testified before the grand jury without mentioning an additional passenger who was in the vehicle.[23].  Counsel established that no illegal activity occurred in connection with these stops and no contraband was found, that no pictures or video of Agent Catalan's surveillance were taken and that Agent

---

[22]rec. doc. 1221, pg. 104-105, 147-148,  trs. 399-400, 442-446.

[23]*Id.* at pg. 151 -154, trs. 446-449.

Catalan did not obtain fingerprint analysis of seized evidence.[24]  Counsel further

established that Agent Catalan did not memorialize information co-defendant

Gatlin allegedly gave regarding Valdez's participation in the conspiracy and that

Gatlin did not identify Valdez in a photographic lineup until the week of his 2012

trial after he pled guilty and promised to cooperate with the government.[25] Valdez'

claim is therefore insufficient to overcome the strong presumption that counsel's

performance fell within the wide range of reasonable professional assistance.

*Strickland*, 466 U.S. at 690.

**Failure to allow Valdez  to testify**

Valdez alleges that his "counsel would not allow him to testify despite the

fact that [he] 'regularly expressed' his desire to do so" and therefore, his "counsel

performed deficiently."  Valdez asserts that "had he been allowed to testify, he

would have been able to establish his non-involvement into any of his families

activities" thus supporting his claim of innocence.

A criminal defendant's right to testify is well established, and only the

defendant can waive this right, not his counsel. *United States v. Harris*, 408 F.3d

186, 192 (5th  Cir.2005); *United States v. Mullins*, 315 F.3d 449, 452 (5th Cir.

---

[24]*Id*. at pg. 99-101, trs. 394-396;  pg. 209-210, trs. 504-505.

[25]*Id*. at pg. 209- 212, trs. 504-507.

2002). Thus, counsel cannot override the ultimate decision of a defendant who wishes to testify contrary to counsel's advice. *Bower v. Quarterman,* 497 F.3d 459, 473 (5th Cir. 2007); *Mullins*, 315 F.3d at 453.

Nevertheless, "[a] defendant who argues that his attorney prevented him from testifying must still satisfy the two prongs of *Strickland*." *Bower,* 497 F.3d at 473; *Harris*, 408 F.3d at 192. "[A]n ineffective assistance contention may be rejected on an insufficient showing of prejudice, without inquiry into the adequacy of counsel's performance." *Strickland,* 466 U.S. at 689-94. Accordingly, the Fifth Circuit has found claims, like that asserted by Valdez, to be meritless in the absence of a sufficient showing of *Strickland* prejudice. *Mullins*, 315 F.3d at 456-457; *Harris*, 408 F.3d 192-193.

In *Mullins,* the Fifth Circuit held that the district court did not clearly err in finding the attorney's actions "objectively unreasonable," but reversed on application of the second *Strickland* prong, concluding that the defendant could not show that he was prejudiced by his attorney's failure to call him as a witness. *Id*. at 456. Considering that all or much of Mullins's testimony was in the record elsewhere, in addition to the potential damage that the government could elicit on cross-examination, Mullins could not show how his testimony probably would have changed the outcome of his case. *Id.*

Similarly, in *Harris*, all or much of Harris's proffered testimony was elsewhere in the record, as a result of defense counsel's questioning of the defense sole witness and the cross-examination of the law enforcement officers. The Fifth Circuit opined that putting Harris on the stand probably would have done more harm than good, and would have placed him subject to rigorous potentially damaging cross-examination. As a result the court found that Harris had not shown that he was prejudiced by not testifying.

The same is true in this case. All or much of petitioner's version of events, to which petitioner presumably would have testified had he taken the stand, appears in the record. Valdez acknowledges this fact as he alleges in his motion that his "family members testified during trial that he had non-involvement." [rec. doc. 1318-1, pg. 42]. Although Valdez apparently claims that he would have testified that he was not involved in the drug conspiracy in that he never discussed drugs or drug activity with his family, that he was not the driver of the vehicle during the April and May 2004 stops and that he and the family went to visit Alexander's residence after leaving the casino for Victor's birthday, that evidence was already amply presented to the jury through the testimony of Maria Aide

Delgado and Victor Luna Valdez, and on cross-examination of Agent Catalan.[26] Given the overwhelming evidence of petitioner's participation in the conspiracy, this Court cannot conceive of anything Valdez could have said, which had not already been presented through alternative sources, that would have provided any reasonable possibility of a different outcome in his case.

Furthermore, given the manner in which the government impeached the testimony of Maria Delgado and Victor Valdez, putting petitioner on the stand most probably would have done more harm than good.[27]  Although evidence of Valdez' Arkansas conviction was presented to the jury, the jury was not aware of Valdez' other drug related convictions.  Had Valdez testified, he would have been subject to extensive cross-examination about those prior convictions, thereby compounding this unfavorable evidence and further inflaming the jury.  Under these circumstances, this Court cannot find that Valdez's failure to testify unduly prejudiced his case.

Valdez  has not demonstrated that had he testified, the result of his criminal trial would have been different, or stated differently, that his testimony would have

---

[26]rec. doc. 1221, pg. 104-105, 147-154;  trs. 399-400, 442-449; 1221-4, pg. 159-175, trs. 1224-1240; 1221-5, pg. 13-15, 21-24, 32-33;  trs. 1263-1265, 1271-1274, 1282-1283; 1221-6, pg. 87-92, 147-153, 203-209;  trs. 1529-1534, 1589-1595, 1645-1651.

[27]rec. doc. 1221-5, pg. 67-188, trs. 1317-1438; 1221-6, pg. 9-26, 43-76, 154-189, 199-203;  trs. 1451-1468,  1485-1518; 1596-1631, 1641-1645.

made a different outcome reasonably probable. *See Mullins,* 315 F.3d at 456

*citing Sayre, supra.* (finding that *Strickland*'s prejudice element, "which raises

high the bar to relief",  not satisfied because while the petitioner's testimony *might*

have persuaded the jury, the court could not say that there was a reasonable

probability that his testimony would have done so).  Whether Valdez testified or

not, the jury heard his side of the story and was simply not persuaded.

Accordingly, petitioner has not satisfied the second  *Strickland* requirement and is

therefore not entitled to relief with respect to this claim.

**Failure to request a special verdict form specifying which drug was involved
in the conspiracy**

Valdez asserts that his counsel was ineffective for failing to request a

special verdict form which specified which drug or drugs the jury found he was

involved with in the conspiracy, cocaine, cocaine base or crack.  Citing *Jones,*

*Apprendi, Blakely* and *Alleyne*, Valdez asserts that this caused him prejudice

because the particular drug (and quantity) is an element of the offense which must

be found by the jury.

As this Court previously stated with respect to Valdez' *Alleyne* claim, the

jury verdict form contained the specific amount of each drug necessary to find

Valdez guilty of the charged offense and to trigger the applicable statutory

sentencing range, ten years to life imprisonment. [rec. doc. 1076]. Further, the court read the jury verdict form to the jury, expressly telling the jurors the amount of each drug which they had to find in order to convict Valdez. [rec. doc. 1221-7, pg. 70, tr. trs. pg. 1730]. It was not necessary for the jurors to specify which of the three drugs they found as each drug in the specified amount listed and instructed by the court was sufficient to trigger the applicable ten to life penalty. Valdez has therefore shown no prejudice as a result of his counsel's alleged inaction. The second *Strickland* requirement has not been met.

**Failure to Investigate to Prepare a Meaningful Defense**

Valdez alleges in a single sentence that his counsel "failed to properly and adequately investigate petitioner's criminal case by interviewing all witnesses, then examining any and all physical evidence, convessing [sic] and marshaling facts and evidence in defense of petitioner." [rec. doc. 1318-1, pg. 48].

"A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *Cox v. Stephens*, 602 Fed. Appx. 141, 146 (5th Cir. 2015) *quoting Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993) (citation and quotations omitted); *Druery v. Thaler,* 647 F3d 535, 541 (5th Cir. 2011). Bare allegations are insufficient. *See Cox* and *Nelson, supra.* Valdez has

failed to carry his burden and Valdez' self-serving allegations are refuted by the record before this Court. The trial transcript reflects that Mr. Richard was extremely well-prepared and did an exemplary job at trial refuting the government's charges.

**Failure to object to the Prosecutor's Misconduct**

In a similar conclusory fashion Valdez alleges that his counsel failed to object "to numerous unchallenged incidents of prosecutor's tactics . . . ." He lists in a single paragraph, without any specific supporting facts, the following nonspecific instances of prosecutorial misconduct: "harass[ment] of potential witnesses; fail[ure] to turn over discovery materials; manipula[tion of the] jury selection process; ma[king] deals to purchase false testimony; repeatedly ma[king] highly prejudicial comments during trial; improperly bolstering Government witness referring to evidence not in use and . . . elicit[ing] inadmissible and inflammatory evidence." [rec. doc. 1318-1, pg. 45].

Petitioner's "[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Green v. Johnson,* 160 F.3d 1029, 1043 (5th Cir. 1998); *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) . Petitioner's self serving conclusory statements that the outcome of his trial would have been different "fall far short of satisfying

*Strickland's* prejudice element." *Sayre*, 238 F.3d at 635. This is particularly true given the court's prior ruling on Valdez' Motion to Dismiss the second superceding indictment, rejecting all of his prosecutorial misconduct claims[28] [*See* rec. docs. 1004 and 1039] and the overwhelming evidence of petitioner's guilt presented at trial. Accordingly, Valdez' ineffective assistance of counsel claim is without merit.

**Counsel's Conflict of Interest**

Valdez alleges that his attorney, Mr. Richard operated under a conflict of interest. More specifically, he asserts that he and counsel had "irreconcilable conflicts" about how to proceed with the case. Valdez complains that he wanted to challenge the "sufficiency of the evidence and all other evidence and testimony for admissibilities [sic] purposes" but that counsel failed to follow his instructions. Thus, Valdez claims that the relationship had "totally deteriorated" to the point of ineffective assistance.

In cases like the present case, where the alleged conflict stems not from

---

[28]To the extent that Valdez argues in a supplemental memorandum filed over one year after his § 2255 motion was filed that the government committed prosecutorial misconduct by tampering with witness Deborah McKnight regarding her 2009 trial testimony as to when co-defendant Wyatt began doing business as B&M [rec. doc. 1345], that claim was fully explored and rejected by the court in connection with Valdez' Motion to Dismiss the second superceding indictment. There is no reason for this Court to revisit those claims. Moreover, as set forth below and as stated in connection with Valdez' Motion to Dismiss, this issue has absolutely nothing to do with the charges against Valdez.

multiple or serial representation, but from conflicts between an attorney and his client, the applicable standard is that set forth above in *Strickland v. Washington*. *Beets v. Scott*, 65 F.3d 1258, 1265-1266 (5th Cir. 1995). Accordingly, to warrant *habeas* relief, petitioner must demonstrate the presence of a conflict between himself and counsel which caused him prejudice. This petitioner has not done.

Initially, this Court finds that Mr. Richard (or other prior counsel) was under no obligation to file every motion requested by Valdez. To the contrary, counsel is required only to file potentially meritorious motions - counsel cannot be deficient for failing to press a frivolous point. *Green v. Johnson*, 160 F.3d 1029, 1036-37 (5th Cir. 1998); *Sones v. Hargett*, 61 F.3d 410, 415 (5th Cir.1995); *Johnson v. Cockrell*, 306 F.3d at 255. Valdez has not shown that there were any potentially meritorious motions available to him that Mr. Richard (or other counsel) did not file. Thus, Valdez has not shown that an actual conflict of interest existed.

Further, the mere fact that a criminal defendant and his attorney have personality conflicts or disagreements regarding trial strategy does not constitute an actual conflict of interest requiring the attorney to be disqualified. As the Supreme Court noted in *United States v. Cronic*, 466 U.S. 648, 657 fn. 21, (1984) "the appropriate inquiry focuses on the adversarial process, not on the accused's

relationship with his lawyer as such."

   The record before this Court fails to establish that any irreconcilable
conflict between Valdez and Mr. Richard so great that it resulted in a total lack of
communication preventing an adequate defense, or sufficient tension between
them to preclude Mr. Richard from providing effective assistance of counsel.  The
record before this Court demonstrates that Valdez' counsel rendered meaningful
assistance throughout the entirety of his representation of Valdez.  Counsel
zealously represented Valdez at all stages of the criminal proceeding, first, through
the filing and prosecution of Valdez' Motion to Dismiss the second superceding
indictment on prosecutorial misconduct grounds, necessitating a three day
evidentiary hearing, and the issuance of a 108 page Report and Recommendation
on Valdez' claims,  then during Valdez' nine day trial, wherein counsel skillfully
cross-examined the government's witnesses, and expertly presented witnesses and
evidence on Valdez' behalf, and finally at sentencing, challenging the
government's use of Valdez' prior convictions to enhance Valdez' sentence, despite
the court's initial suggestion that such a challenge was not sufficiently supported
by controlling jurisprudence.

   In sum, counsel was not only conscious of his duties to his client,  he sought
conscientiously to discharge those duties, and in so doing, ensured that the

adversary process was reliable. Therefore, petitioner's claim is without merit.

**Failure to Explain the Consequences of the § 851 Notices/Inability to Challenge the § 851 Notices**

In these related claims Valdez argues that former counsel Dauphin and Wolfe were served with the government's § 851 Notices of prior convictions and that neither they nor trial counsel Richard told him of these filings. Accordingly, Valdez claims that he was unaware that he would be subject to a mandatory life sentence if convicted. Valdez further asserts that because he was unaware of these filings, he was unable to challenge the inaccuracy of the notices or the procedural validity of using these convictions as qualifying prior convictions for purposes of enhancement.

Initially, the Court notes that contrary to Valdez' present allegations, the record discloses that the court, AUSA and Mr. Richard all agreed on the record that Valdez had been informed that upon conviction Valdez would be facing a life sentence. At the September 17, 2012 sentencing hearing the court expressly recalled the she "pointed out" a couple times prior to trial to both Valdez and Mr. Richard that if Valdez was convicted they would be "dealing with" a mandatory life sentence.[29] Mr. Richard confirmed the court's recollection was accurate. Further, AUSA McCoy stated on the record that prior to empaneling the jury, he

---

[29]The court expressed this same recollection three days earlier on September 14, 2017. [rec. doc. 1222, pg. 3, 14 and 29].

told Valdez in front of Mr. Richard and with Mr. Richard's permission that if Valdez did not accept the plea offer he would receive a mandatory life sentence if convicted. Mr. Richard verified that this discussion, as stated by McCoy, had occurred. [rec. doc. 1214, pg. 23-24]. Based on these representations and the court's recollection, during Valdez' September 17, 2012 sentencing hearing, the court expressly found that Valdez knew that he was facing a mandatory life sentence before going to trial and that it was explained to him as follows:

> You knew that. It was explained to you. The Court even had discussions about the fact that we are looking at mandatory life sentences here. And, as the government pointed out, they explained that to you. Mr. Richard recalled the conversation. The Court recalls conversations where the Court asked specifically, is there not going to be a plea, because we're looking at mandatory life here.

[rec. doc. 1214, pg. 32].[30]

Contrary to Valdez' present argument, the record is clear that Valdez had more than ample opportunity to challenge the notices and the procedural validity and applicability of using his convictions as qualifying prior convictions for purposes of enhancement. The entirety of the September 14, 2012 sentencing hearing centered on Valdez' challenges to the § 851 notices, even though such challenges could have been deemed untimely. [rec. doc. 1222]. The court reset the

---

[30]The Court again summed up this finding before imposing Valdez' life sentence stating "it's certain that Mr. Richard knew and you knew prior to this last trial as to the possible application of 851." [rec. doc. 1214, pg. 60].

sentencing hearing for a later date to allow counsel additional time to confer with Valdez and to file a memorandum in support of Valdez' arguments. [rec. doc. 1199].  That memorandum was filed. [rec. doc. 1201].  The court thereafter resumed the hearing on September 17, 2012, again allowing Valdez to challenge the § 851 notices.  However, the court did not rule in Valdez' favor. [rec. doc. 1214].  Finally, Valdez brought up the validity and applicability of the § 851 notices on appeal, and again the court found Valdez' challenges to be without merit. [rec. doc. 1281].  Valdez' present allegations are belied by the record.  The record establishes that counsel was not deficient with respect to the § 851 Notices of Prior Conviction.

Furthermore, even if Valdez had not been advised of the filing of the § 851 notices or the consequences thereof or that he was not permitted an opportunity to challenge the § 851 notices as he presently claims, the instant ineffective assistance of counsel claims are without merit.  President Obama has commuted Valdez' life sentence based on the recidivist statute to a term of 168 months imprisonment.  Accordingly, Valdez can show no prejudice as a result of his counsels' alleged inadequacies.  This is particularly the case given that Valdez' commuted sentence is well below his non-enhanced Guideline sentencing range of 210 to 262 months imprisonment, and no known mitigating circumstances were found which would warrant a departure. [rec doc. 1205, ¶ 91 and 105].  This

Court's conclusion is bolstered by Judge Doherty's comments at sentencing wherein she stated several times that had a mandatory life sentence not been required, she would have imposed a "very significant sentence", with an "emphasis on 'very'". [rec. doc. 1214, pg. 59 and 62]. The record negates any argument that Judge Doherty would have imposed a sentence below the Guideline range. Petitioner has not satisfied the second *Strickland* requirement. Thus, these claims are without merit.

**Failure to present the "fatal variances" between the second superceding indictment and the evidence**

Valdez argues that there was a material variance between the allegations of the second superceding indictment and the trial evidence. He argues that the government failed to present any evidence that he was indeed involved in, or connected with, the charged conspiracy.

In order to prevail on a material variance claim, Valdez must prove (1) a variance between the indictment and the proof at trial; and (2) that the variance affected his "substantial rights." *United States v. Morris*, 46 F.3d 410, 414 (5th Cir. 1995). A material variance occurs "when the proof at trial depicts a scenario that differs materially from the scenario charged in the indictment but does not modify an essential element of the charged offense." *United States v. Mitchell,* 484

F.3d 762, 769 (5th Cir. 2007); *United States v. Delgado*, 401 F.3d 290, 295 (5th Cir. 2005). Courts determine whether a variance occurred by comparing the evidence presented at trial with the language of the indictment. *Id. citing United States v. Medina*, 161 F.3d 867, 872 (5th Cir.1998). A variance is material if it prejudices the defendant's "substantial rights," either by surprising the defendant at trial or by placing the defendant at risk of double jeopardy. *United States v. Valencia*, 600 F.3d 389, 432 (5th Cir. 2010); *United States v. Robinson*, 974 F.2d 575, 578 (5th Cir. 1992) *citing Berger v. United States*, 295 U.S. 78, 82 (1935). In contrast, a variance is immaterial if it does not "impair the defendant's ability to defend himself through failing to identify the nature of the charge." *Robinson,* 974 F.2d at 578*; United States v. Eaton*, 501 F.2d 77, 79 (5th Cir.1974); *United States v. Linn,* 889 F.2d 1369, 1373 (5th Cir. 1989) (A variance is fatal if the defendant "was taken by surprise by reason of the variance and that such surprise prejudiced the preparation of his defense."). If the court finds a variance did occur, reversal is necessitated only if the variance prejudiced the defendant's substantial rights. *Id. citing Delgado*, 401 F.3d at 295 and *Medina*, 161 F.3d at 872.

Valdez has not shown that there was a material variance between the second superceding indictment and the trial evidence. To the contrary, review of the entire trial transcript, compared to the language of the indictment reveals that the

government presented evidence of the very scenario alleged in the indictment - a the single drug conspiracy for profit from the procurement, smuggling and transportation of cocaine and marijuana from Mexico into the United States through the Rio Grande Valley in Texas into the Acadiana region of Louisiana. As previously discussed, both Alexander and Gatlin testified that Valdez was one of the family members who delivered marijuana and cocaine to Lafayette.[31] The government presented evidence of the overt acts listed in the second superceding indictment, including Valdez' possession of marijuana in Arkansas[32] (overt act (a)), that Valdez visited Alexander's residence on April 27, 2004 and May 21, 2004[33] (overt acts (b) and (c)), the November 26, 2004 Progresso, Texas entry point stop during which seven packages of cocaine were found on Valdez' mother[34] (overt act (d)), the April 23, 2006 and May 20, 2006 stops of vehicles registered to Valdez' company near the border checkpoint in Sarita, Texas and La Joya, Texas, which contained a large amount of money and marijuana,

---

[31] rec. doc. 1221-1, pg. 154-162, trs. 682-691; 1221-2, pg. 86-87, 91-92, 94-103, 132; trs. 833-834, 838-839, 841-850, 879.

[32] rec. doc. 1221-4, pg. 79-89, 96-98, 182-185; trs. 1144-1154, 1161-1163, 1167-1170.

[33] rec. doc. 1221, pg. 83-88, 102-105, 151-162; trs. 378-383, 397-400, 446-457.

[34] rec. doc. 1221-1, pg. 194-210, trs. 723-739.

respectively (overt acts (l) and (m)).[35]  Valdez does not suggest how he was

surprised or prejudiced by the evidence presented at trial nor under the

circumstances could he plausibly do so.  Valdez had notice of the charge against

him and of the particular evidence that supported that charge.  He was tried for the

crime specified in the indictment and thus was not at risk of double jeopardy.

Valdez' substantial rights were not affected by any material or fatal variance.

Therefore,  counsel was not ineffective for failing to present this meritless

argument to the court.

**Failure to file a Motion to Dismiss presenting "transference of guilt"**

In a related argument, Valdez argues that his counsel was ineffective for

failing to file a Motion to Dismiss or request a precautionary instruction based on

alleged transference of guilt.

The issue of transference of guilt arises when defendants are tried *en masse*

on a conspiracy count, which in actuality is not a single conspiracy, but rather

several separate conspiracies, resulting in a fatal variance between the indictment

and proof at trial.  *United States v. Richerson*, 833 F.2d 1147, 1155 (5th Cir.1987)

(recognizing the Court's "duty to protect those tried *en masse* on a conspiracy

---

[35]rec. doc. 1221-3, pg. 12-14, 27-31,51-52, 74-75, trs. 914-916,  929-933,  953-954, 976-977;
1221-4, pg. 40-42, 50-51, 57; trs. 1105-1107, 1115-1116, 1119.

count from possible transference of guilt from other joint defendants.") *see also United States v. Mitchell*, 484 F.3d 762, 769-770 (5th Cir. 2007) ("The most common prejudice to a substantial right caused by a variance in a conspiracy trial is transference of guilt from one co-defendant to another in a trial with multiple defendants."). The doctrine is concerned with the danger that a defendant is convicted of a conspiracy, in which he did not participate, because of his association with co-defendants who were members of the charged conspiracy or for his participation in an uncharged conspiracy. *United States v. Saldivar*, 48 F.3d 530 (5th Cir. 1995). A multiple conspiracies instruction eliminates the concern about transference of guilt. *Id.*

Valdez was tried alone. Thus, there was no danger of transference of guilt from one co-defendant to another. *United States v. Jackson,* 544 Fed. Appx. 380, 382 (5th Cir. 2013) *citing United States v. Mitchell,* 484 F.3d at 770–71. Valdez does not argue that there were multiple as opposed to a single conspiracy proved by the government. Instead, Valdez cites inapposite transference of guilt jurisprudence to support an argument that there was insufficient evidence to support the jury's finding that he was a member of the single charged conspiracy. As set forth above, the evidence was more than sufficient to support the jury's finding. Counsel was therefore not objectively unreasonable for failing to file a Motion to Dismiss or request a precautionary instruction based on transference of

guilt.  The first prong of *Strickland* is not satisfied.

**Failure to assert a double jeopardy challenge**

Valdez argues that he was subjected to double jeopardy because an original and two superceding indictments were issued in this case, and because a prior Arkansas conviction was alleged as an overt act in the conspiracy and was listed as a prior conviction in the government's § 851 Notice of prior convictions.

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. Amend. V.  In general, the Double Jeopardy Clause provides three categories of protection: (1) against a "second prosecution for the same offense after acquittal"; (2) against a "second prosecution for the same offense after conviction"; and (3) "against multiple punishments for the same offense." *United States v. Rabhan*, 628 F.3d 200, 204 (5th Cir. 2010) *citing North Carolina v. Pearce*, 395 U.S. 711, 717 (1969), overruled on other grounds by *Alabama v. Smith*, 490 U.S. 794 (1989).

As the government correctly argues, Valdez was convicted and sentenced only on the conspiracy charged in the second superceding indictment. Thus, no doubly jeopardy violation occurred.  Under the dual sovereignty doctrine, the state and federal government can prosecute a defendant for the same conduct without running afoul of the double jeopardy clause.  *United States v. Solis*, 299 F.3d 420,

435 (5th Cir. 2002).[36]  Finally, there is no double jeopardy violation when the

government lists a  prior conviction as an overt act in a conspiracy because the

conspiracy is a distinct crime from the overt acts that support it[37], nor is there a

double jeopardy violation when the government then uses that same conviction to

enhance the sentence for the conspiracy under § 851.  *United States v. Neely*, 483

Fed. Appx. 800, 801 (4th Cir. 2012) *citing United States v. Ambers*, 85 F.3d 173,

177–78 (4th Cir.1996).

Failure to file a futile motion does not cause counsel's performance to fall

below an objective level of reasonableness.  *Johnson v. Cockrell*, 306 F.3d at 255*;*

*Green v. Johnson*, 160 F.3d at 1037.   Petitioner has not satisfied the first

*Strickland* requirement.  Thus, this claim is without merit.

**Failure to recognize two "fatally flawed" grand jury indictments**

Valdez alleges that counsel was ineffective for failing to challenge the first

---

[36]It is well-established that the Double Jeopardy Clause only bars successive prosecutions by the same sovereign. *United States v. Villanueva*, 408 F.3d 193, 201 (5th Cir. 2005) *citing Heath v. Alabama*, 474 U.S. 82, 88, (1985). Successive prosecutions by the federal government and a state for the same offense are permissible, because they are separate sovereigns. *United States v. Harrison,* 918 F.2d 469, 474 (5th Cir. 1990) *citing  Abbate v. United States*, 359 U.S. 187, 195 (1959) and *United States v. Lanza*, 260 U.S. 377, 382 (1922).

[37] It is well settled that commission of a crime and conspiracy to commit that crime are not the same offense, and a defendant can be prosecuted for both the conspiracy and the substantive offenses. *United States v. Felix*, 503 U.S. 378, 389-390 (1992); *United States v. Casiano*, 929 F. 2d 1046, 1051 (5th Cir. 1991) (holding that "it is beyond dispute, however, that conspiracy and the substantive offense that is the object of the conspiracy are separate and distinct crimes" for double jeopardy purposes).

superceding indictment which he claims was "fatally flawed" because the grand jury which returned the indictment was not presented any evidence of his involvement in the conspiracy charged in Count 1. Thus, he claims that there was no "probable cause against" him. In support, Valdez asserts that the government "dismissed" the original indictment when it obtained the superceding indictment on November 14, 2007. Contrary to Valdez's present contention, a superceding indictment does not dismiss a prior indictment. Under Rule 48(a) of the Federal Rules of Criminal Procedure a pending indictment may be dismissed only upon leave of court. The government may then select the indictment under which to proceed to trial. *United States v. Hickey,* 580 F.3d 922, 929-930 (9th Cir. 2009) ( and cases cited therein). The conspiracy charged in Count 1 of the indictment remained pending and there was no reason for the government to present evidence of that remaining charge to the grand jury when it sought to supercede the indictment to add an additional conspiracy in which Valdez was not involved. Counsel was therefore not objectively unreasonable for filing to bring this meritless claim before the court. *Johnsonv. Cockrell*, 306 F.3d at 255; *Green v.Johnson*, 160 F.3d at 1037. Petitioner has not satisfied the first *Strickland* requirement.[38]

---

[38]To the extent that petitioner argues in his Reply that his attorney, Wolfe, was ineffective for failing to challenge the original and superceding indictment as flawed because they contained language that the Arkansas conviction involved cocaine and marijuana, as opposed to solely marijuana, that claim

**Failure to file a Motion for Judgment of Acquittal/ timeliness of the
Indictment and Overt Acts**

Valdez contends that counsel should have filed a Motion for Acquittal
because the second superseding indictment, brought more than five years after the
last alleged overt act, was barred by the statute of limitations.  This contention
appears based on Valdez' argument that the "original indictment and the 2007
superceding indictment, were voided on September 14, 2011" when a "new lead
prosecutor" obtained the second superceding indictment from a "new grand jury."
[rec. doc. 1318-1, pg. 43].  Valdez also contends that counsel was ineffective for
failing to present or preserve the issue that overt acts in the indictment were barred
by the statute of limitations. This contention is similarly based on Valdez'
assumption that the "first superceding indictment caused the government to
dismiss the original indictment" and that "the first superceding indictment was
invalid." [rec. doc. 1318-1, pg. 16-17].  Thus, he contends the overt acts had to be
committed within five years prior to the date the government obtained the second
superceding indictment on September 14, 2011, that is, after September 14, 2006.

is equally without merit. As this Court found in connection with Valdez's Motion to Dismiss the second
superceding indictment, when the case went to trial in 2009, a stipulation had been prepared and signed
by AUSA Grayson and Wolfe stipulating that the substance found during the stop was marijuana and that
a second sample which was recovered did not contain any controlled substances.  The stipulation was not
filed in the record, however, presumably because the case was mistried on the third day of trial. [rec. doc.
1004, pg. 48-49].  The second superceding indictment upon which Valdez was tried correctly alleged that
Valdez possessed only marijuana. [rec. doc. 911].  Under these circumstances, Valdez cannot
demonstrate that he suffered any prejudice as a result of counsel Wolfe's alleged inaction.

Initially, the Court notes that Valdez' supporting premise is flawed. Neither the original nor first superceding indictments were "voided" by the government's having used a different lead prosecutor to obtain the second superceding indictment from a different grand jury, nor, as this Court explained above, was the original indictment "dismissed" by the government's having obtained a superceding indictment. Valdez cites no applicable jurisprudence to support this proposition, nor has this Court's research discovered any such rule of law. Valdez' premise is inconsistent with Rule 48(a) of the Federal Rules of Criminal Procedure. The record is clear that the government did not dismiss either indictment prior to obtaining the second superceding indictment and the government ultimately chose to proceed only on the latter. Finally, for the reasons set forth above, the superceding indictment was not invalid.

Prosecutions for non-capitol offenses are subject to a five-year statute of limitations. 18 U.S.C. § 3282 (an indictment for a non-capitol offense must be instituted within five years after the offense has been committed). The limitations period for a conspiracy runs from the last overt act of the conspiracy alleged in the indictment and proved at trial. *United States v. Mann*, 161 F.3d 840, 856 (5th Cir. 1998) *citing Grunewald v. United States*, 353 U.S. 391, 396 (1957). The original indictment charging a drug conspiracy beginning on January 1, 2002 through

October 1, 2006, with the last overt act occurring on September 11, 2006[39], was obtained on November 16, 2006. The last overt act, the September 11, 2006 discovery of 230 kilograms of marijuana in a tractor trailer located on co-conspirator Maria Aide Delgado's property, was proved at trial through the testimony of Special Agents Spivey and Callender.[40] Thus, the indictment was timely. The return of a timely indictment tolls the statute of limitations as to the charges alleged therein. *United States v. Schmick*, 904 F.2d 936, 940 (5th Cir. 1990).

A superseding indictment filed while the initial indictment is pending is timely unless it broadens or substantially amends the charges made in the original indictment. *Id.* This is so because "[n]otice to the defendant is the central policy underlying the limitations doctrine." *Id.* Similarly, notice is the touchstone in deciding whether a superseding indictment substantially changes the original charges. *Id.* A timely, pending indictment serves this purpose by apprising the defendants "that they will be called to account for their activities and should prepare a defense." *Id.* If the allegations and charges are substantially the same in the old and new indictments, the assumption is that the defendant has been placed on notice of the charges against him. That is, he knows that he will be called to

---

[39]Overt acts were alleged between February 11, 2003 and September 16, 2006.

[40][rec. doc. 1221-3, pg. 48-51, 74-75, 77-88, trs. 950-953, 976-977, 979-990].

account for certain activities and should prepare a defense. *Id*.

In this case, the second superceding indictment did not substantially amend the original indictment so as to render it untimely. The original indictment gave Valdez notice that he was to defend against charges that he conspired to violate the federal drug conspiracy statute, 18 U.S.C. § 846, through a scheme for profit whereby cocaine and marijuana were knowingly procured, smuggled and transported from Mexico into the United States through the Rio Grande Valley. The underlying crime charged was not impermissibly broadened. The second superseding indictment did not add new charges, and the overt acts remained the same with only minor textural changes. Finally, as noted above, the last overt act, the September 11, 2006 discovery of 230 kilograms of marijuana in a tractor trailer located on co-conspirator Maria Aide Delgado's property, was proved at trial. Accordingly, the second superceding indictment was timely filed and the overt acts were not barred by the statute of limitations.

Since counsel need not file a futile motion, counsel's performance did not fall below an objective level of reasonableness. Petitioner has not satisfied the first *Strickland* requirement.

**Failure to challenge the increased drug amounts in the second superceding indictment**

Valdez argues that counsel was ineffective for failing to challenge the

increased drug amounts in the second superceding indictment.  He contends that these amounts "substantially broadened" the applicable penalty and do not relate back to the original indictment.

The original indictment charged Valdez with conspiracy involving 5 kilograms or more of cocaine, 50 grams *or more* of cocaine base, and 1000 kilograms or more of marijuana in violation of §§ 846, 841(a)(1) and 841(b)(1)(A). [rec. doc. 1, pg. 6[41]].  At that time, § 841(b)(1)(A) called for a penalty of ten years to life for amounts in excess of 5 kilograms of cocaine, 50 grams of cocaine base, or 1000 kilograms of marijuana.  The second superceding indictment likewise charged Valdez with  conspiracy in violation of §§ 846, 841(a)(1) and 841(b)(1)(A) involving 5 kilograms or more of cocaine and 1000 kilograms or more of marijuana, however, the indictment increased the amount of cocaine base to 280 grams or more of cocaine base. [rec. doc. 910, pg. 5[42]].  At the time of the issuance of the second superceding indictment,  § 841(b)(1)(A) called for a penalty of ten years to life for amounts in excess of 5 kilograms of cocaine, 280 grams of cocaine base, or 1000 kilograms of marijuana. The second

---

[41]After the list of overt acts involved in the conspiracy Count 1 expressly alleges "[A]ll in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A). [21 U.S.C. § § 846 and 841(b)(1)(A)]".

[42]After the list of overt acts involved in the conspiracy, Count 1 expressly alleges "[A]ll in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A). [21 U.S.C. § § 846 and 841(b)(1)(A)]".

superceding indictment therefore did not "substantially broaden" the applicable penalty; the second superceding indictment did not render Valdez susceptible to increased punishment. To the contrary, the punishment for the charge remained the same, ten years to life, and Valdez received clear notice of that penalty under the original indictment. *United State v. Walls*, 148 Fed. Appx. 286, 290 (6th Cir. 2005) (finding a superceding indictment setting forth drug quantities did not broaden the original indictment which did not set forth drug amounts because the defendant received clear notice of the possible penalty for the charged offense). Furthermore, as noted by the government and discussed above, the second superceding indictment merely replaced the original indictment instead of amending it or broadening it. *See Schmick*, *supra*. *See also United States v. Hardeman*, 48 Fed. Appx. 918 (5th Cir. 2002). As such it was timely and this claim is without merit.

**Failure to file a Motion to Suppress wiretap recordings**

Valdez alleges that counsel was ineffective for failing to file a Motion to Suppress wiretap recordings between co-defendants Eric Alexander and Maria Aide Delgado. He asserts that these recordings were played to the jury to undermine the testimony of Delgado, Valdez' key witness. He asserts that the recordings were subject to suppression because the court lacked authority to issue the order allowing them to be obtained because Delgado was allegedly in the Rio

74

Grande Valley in Weslaco, Texas when the conversations were intercepted and the "listening post" was likewise outside this Court's jurisdiction.

Where defense counsel's failure to litigate a Fourth Amendment claim is the principal allegation of ineffectiveness, in addition to the *Strickland* factors, the defendant must prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

Valdez lacked standing to move to suppress the wiretap evidence of conversations between Delgado and Alexander. It is well settled that there is no "co-conspirator exception" to the rule that a defendant must have standing to contest the constitutionality of a search or seizure. *United States v. Padilla*, 508 U.S.77 (1993); *United States v. DeLeon*, 641 F.2d 330, 337 (5ᵗʰ Cir. 1981). A defendant can urge the suppression of evidence obtained in violation of the Fourth Amendment only if that defendant demonstrates that his Fourth Amendment rights were violated by the challenged search or seizure. *Padilla,* 508 U.S. at 81 *citing Alderman v. United States*, 394 U.S. 165, 171–172 (1969), *Rakas v. Illinois,* 439 U.S. 128, 131, n. 1, 133–134 (1978) and *Rawlings v. Kentucky*, 448 U.S. 98, 106 (1980). Thus, suppression of the product of a Fourth Amendment violation cannot be urged "by those who are aggrieved solely by the introduction of

damaging evidence. Co-conspirators and co-defendants have been accorded no special standing." *Padilla,* 508 U.S. at 81-82 *citing Alderman*, 394 U.S. at 171–172.[43] This rule is fully applicable to wiretap recordings. *Alderman*, 394 U.S. at 171-176; *United States v. Scasino*, 513 F.2d 47, 50 (5ᵗʰ Cir. 1975).

In light of the above, any Motion to Suppress filed by Valdez challenging the wiretap evidence would not have been meritorious. In fact, no hearing on the Motion would have been granted because Valdez lacked standing to bring the Motion. Since counsel need not file a futile motion petitioner has not satisfied the first *Strickland* requirement. Thus, this claim is without merit.

Further, even if Valdez had standing, this Court rejected a similar ineffective assistance of counsel claim by Delgado asserted in her § 2255 motion, finding that the government obtained an order which authorized the recording of telephone calls placed and received by Alexander on his telephone, and there is no requirement, Constitutional, statutory or otherwise, that the government obtain a

---

[43]Congress has provided only that an 'aggrieved person' may move to suppress the contents of a wire or oral communication intercepted in violation of law. 18 U..S.C. § 2510(10)(a) provides that "[a]ny aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, a State, or a political subdivision thereof, may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter, or evidence derived therefrom," 18 U.S.C. § 2510 defines "aggrieved person" as "a person who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed." Further, the Act's legislative history indicates that 'aggrieved person,' the limiting phrase, should be construed in accordance with existent standing rules. *See Alderman v. United States*, 394 U.S. at fn. 9 *citing* S.Rep.No.1097, 90th Cong., 2d Sess., at 91, 106.

separate order authorizing it to record the conversations of each of the other parties involved in each of the intercepted communications. Thus, any Motion to Suppress filed by Delgado challenging these intercepted recordings would not have been meritorious. [*See* rec. doc. 1283]. Petitioner has presented nothing to this Court to change its prior analysis.[44] As such, Valdez' ineffective assistance of counsel claim fails.

Moreover, as noted by the government, the record reveals a strategic reason justifying counsel's failure to file a Motion to Suppress. Of the 10,000 conversations, none are calls in which Valdez was engaging in drug transactions thus suggesting that he was not involved in the conspiracy, but rather was a mere family member. This fact was presented to the jury by counsel during his opening statement and by evidence elicited on direct and cross examination of Agent Catalan which established that the pertinent recordings were between Delgado and Alexander, not Valdez.[45] Therefore, it appears that counsel's decision not to file a motion to suppress was objectively reasonable as it appears to have been the

---

[44]The Court additionally noted with respect to Delgado's prior motion to withdraw and § 2255 Motion, wherein she asserted a similar claim, and again notes in the context of the present claim, to the extent that Valdez or any other co-defendant had standing to file a motion to suppress, that given that twelve other persons were indicted in this case, and not one of those defendants filed a Motion to Suppress the wiretap recordings, the court would find it hard, if not impossible, to find Valdez' counsel ineffective for failing to file such a motion. [*See* rec. doc. 742 and 1283]. To the contrary, the absence of any such motion by any other co-defendant suggests no grounds for a meritorious motion exist.

[45][rec. doc. 1221, pg. 14, trs. 309; 1221-1, pg. 130-133, trs. 659-662].

product of sound trial strategy.

For these reasons, counsel was not ineffective for failing to file a Motion to Suppress the wiretap recordings.

## B. Ineffective Assistance of Appellate Counsel

Valdez claims that he received ineffective assistance of appellate counsel because appellate counsel: (1) failed to raise the "fatal variances" in the second superceding indictment; (2) failed to raise insufficiency of the evidence; (3) failed to raise the issue regarding the use of a special verdict form; (4) failed to raise the issue regarding the increased drug amounts in the second superceding indictment; (5) failed to raise that the overt acts were time barred; (6) failed to raise that the indictments were defective; (7) failed to advise that writs to the United States Supreme Court could be sought; and (8) failed to assert a claim under *Martinez v. Ryan* for failure to contest the merits of the underlying criminal charge, and instead challenged the procedural aspects of the proceeding.

Ineffective assistance of appellate counsel claims are governed by the test set forth in *Strickland v. Washington*. *Amador v. Quarterman*, 458 F.3d 397, 410 (5th Cir. 2006). Therefore, petitioner must demonstrate that his appellate counsel's performance was deficient and that he was prejudiced by the deficient performance because the outcome of his appeal would have been different. *Id*. at

410–11. "Counsel need not raise every nonfrivolous ground of appeal, but should instead present solid, meritorious arguments based on directly controlling precedent." *Ries v. Quarterman*, 522 F.3d 517, 531–32 (5th Cir. 2008) (citation and internal quotation marks omitted). Thus, appellate counsel is not ineffective for failing to present frivolous arguments on appeal. *Williams v. Collins*, 16 F.3d 626, 635 (5th Cir. 1994); *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) (failure to raise legally meritless argument cannot support an ineffectiveness claim).

In light of the above analysis petitioner's first six claims (failure to raise the "fatal variances" in the second superceding indictment, failure to raise insufficiency of the evidence, failure to raise the issue regarding the use of a special verdict form, failure to raise the issue regarding the increased drug amounts in the second superceding indictment, failure to raise that the overt acts were time barred and failure to raise that the indictments were defective) are without merit. Thus, any appellate claim based upon these arguments would have been meritless. Valdez is therefore not entitled to relief on these claims.

**United States Supreme Court Writs**

Valdez faults appellate counsel for allegedly failing to advise that writs to the United States Supreme Court could be sought. This claim is belied by the record before this Court. The government has submitted appellate counsel's

Motion to Withdraw which she filed in the Fifth Circuit and served on Valdez. That pleading expressly states that counsel told Valdez that there were no viable issues on which to proceed to the United States Supreme Court.[46] Accordingly, the first *Strickland* requirement is not met and Valdez's claim is without merit.

### Martinez v. Ryan

Valdez asserts a claim purportedly under *Martinez v. Ryan,* 566 U.S. 1 (2012*)* for appellate counsel's failure to contest the merits of the underlying criminal charge, and instead challenged the procedural aspects of the proceeding. This claim is legally without merit for several reasons.

In *Martinez*, the Court held that, as an equitable matter, in states which do not permit the raising of an ineffective assistance of counsel claim via post-trial motion or on direct appeal, ineffective assistance in a collateral proceeding—the first proceeding in which an ineffective assistance claim may be raised—may constitute "cause" for procedural default of an ineffective assistance of counsel claim in two circumstances: (1) where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial or (2) where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of

---

[46][rec. doc. 1324-2].

*Strickland*, meaning that the ineffective assistance claim is meritorious. *Martinez*, 566 U.S. at 14.

First, *Martinez* is inapplicable in petitioner's case. *Martinez* concerns procedural default based on ineffective assistance of *habeas* counsel in state *habeas* proceedings involving state procedural rules. However, petitioner is a federal prisoner who wishes to collaterally attack the legality of his federal conviction. Accordingly, this court has held that *Martinez* is inapplicable to federal prisoners seeking to challenge their federal convictions. *United States v. Guillory,* 2013 WL 4782211, *6 (W.D. La. 2013) *citing Buenrostro v. United States*, 697 F.3d 1137, 1140 (9th Cir. 2012); *Lebron v. Terrell*, 2013 WL 443598, 5 (D.R.I. 2013); *United States v. Juarez*, 2013 WL 791066, *3 (N.D. Fla. 2013); *United States v. Sanchez*, 2013 WL 143804, at fn. 2 (D. Neb. 2013); *Cuero-Salazar v. United States*, 2013 WL 1686273, *2 (M.D. Fla. 2013).

Second, while this Court has found that petitioner's insufficient evidence claim is defaulted because it was not raised on appeal[47], in so finding this Court alternatively rejected this claim on the merits. Likewise, while petitioner's *Alleyne* claim was rejected in part because it had not been raised on direct appeal and

---

[47]Petitioner's § 851 service of notice claim was not considered because it had already been fully litigated on direct appeal and, accordingly, under Circuit precedent could not be reconsidered in a § 2255 Motion. Petitioner's actual innocence claim was rejected because there is no such free-standing claim and petitioner had not satisfied the requisites for such a claim.

*Alleyne* cannot be applied retroactively to cases on collateral review, the claim was

also briefly discussed on the merits. Thus, the holding in *Martinez*, even if

applicable to federal prisoners, does not apply in petitioner's case. *Guillory,* 2013

WL 4782211, *7 *citing Flenoid v. Lockett*, 2013 WL 1900493, 2 (S.D. Ind. 2013).

## CONCLUSION

For the foregoing reasons, the undersigned recommends that Antonio Luna

Valdez, Jr.'s § 2255 Motion [rec. doc. 1318] be **DENIED and DISMISSED**

**WITH PREJUDICE.**

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b),

parties aggrieved by this recommendation have fourteen (14) days from service of

this Report and Recommendation to file specific, written objections with the Clerk

of Court. A party may respond to another party's objections within fourteen (14)

days after being served with a copy of any objections or response to the District

Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or**

**the proposed legal conclusions reflected in this Report and Recommendation**

**within fourteen (14) days following the date of its service, or within the time**

**frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from**

**attacking either the factual findings or the legal conclusions accepted by the**

District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C. § 2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

Signed this 27th day of April, 2017, at Lafayette, Louisiana.

_____
**PATRICK J. HANNA**
**UNITED STATES MAGISTRATE JUDGE**